**Jill RUZICKA, Appellant,**

**v.**

**The CONDE NAST PUBLICATIONS, INC. and Claudia Dreifus, Appellees.**

**No. 90–5243.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1991.

Decided July 19, 1991.

Elliot C. Rothenberg, Minneapolis, Minn., for appellant.

Thomas Tinkham, Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

LAY, Chief Judge.

Jill Ruzicka appeals the grant of summary judgment in favor of Conde Nast Publications, Inc. ("Conde Nast") and Claudia Dreifus on Ruzicka's breach of contract and other state law claims. Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332 (1989). Conde Nast owns Glamour Magazine. ("Glamour"). Ruzicka agreed to be interviewed for a story in Glamour on sexual abuse. Dreifus, who wrote the story, promised Ruzicka that her name would not be used and that she would not be identifiable from the article. Ruzicka contends that the promise was broken when Glamour published the story about her in the September, 1988 issue of the magazine. The district court[1] concluded that the first amendment restricted the ability of the plaintiff to bring a breach of contract claim and granted the defendants' motion for summary judgment. *Ruzicka v. Conde Nast Publications, Inc.*, 733 F.Supp. 1289, 1300–01 (D.Minn.1990). We affirm the judgment of the district court with respect to Ruzicka's contract and tort claims, but remand to the district court for consideration of Ruzicka's claim under principles of promissory estoppel.

## BACKGROUND

### I. *The Glamour Magazine Article*

In preparing an article on therapist-patient sexual abuse, Dreifus contacted a Minneapolis counseling center and requested an interview with patients who had been sexually abused by their therapists. Ruzicka, a patient at the center, told Dreifus she would consent to an interview only if she was not "identified or made identifiable" in the resulting article. Dreifus agreed to mask Ruzicka's identity.[2] During the interview, Ruzicka described in intimate detail how her therapist had sexually abused her. She also told Dreifus she had been sexually abused by her father as a child. In addition, Ruzicka related how she had

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

2. During the interview, Ruzicka asked Dreifus only once not to print specific information. Ruzicka told Dreifus that information about one of her past jobs would make her identifiable and asked that it not be used in the article. That request was honored.

sued her therapist and was overcoming the trauma caused by the abuse.[3]

Before publication, Dreifus called Ruzicka and read her a draft of the article. Ruzicka's story was not attributed to any person by name and placed Ruzicka in "a midwestern city." There was no mention of Ruzicka's service on a Minnesota task force that dealt with therapist-patient abuse. Dreifus asked permission to use Ruzicka's name and Ruzicka again refused and reiterated the terms of the agreement that she not be identifiable. Although Ruzicka claims she understood the draft would be substantially similar to the finished article, she admits that Dreifus told her the article would be re-written at the request of the Glamour editors.

Dreifus' article, entitled "Sex with Shrinks" in the table of contents and "Patient–Therapist Sex" in the text itself, appeared in the September, 1988 issue of Glamour. The article contains Ruzicka's account of the sexual abuse by her therapist, Ruzicka's subsequent activities to help other abuse victims, another victim's story, and other information about sexual abuse by therapists. The article refers to Ruzicka as "Jill Lundquist", states she is a Minneapolis attorney, refers to her lawsuit against the offending psychiatrist and the State Board of Medical Examiners, and indicates she was a member of the state task force that helped write a 1985 law criminalizing sexual exploitation by therapists. The article states that the real names of the patients and abusing doctors had been changed.

## II. *Ruzicka's Suit and the District Court Decision*

Ruzicka filed this action, alleging that the agreement to conceal her identity was a contract which was breached by the inclusion of details in the article such as her first name, her residence and profession, and her participation on the state task force. Inclusion of her service on the task force makes her absolutely identifiable, Ruzicka contends, because the task force's public report lists the participants and she was the only woman. Ruzicka claimed that two people who had read the article surmised that "Jill Lundquist" was really Ruzicka. She admits that these people were her former counselors who had extensive prior knowledge of her history of abuse and other background data. In addition to the contract claim, Ruzicka alleges five tort claims: fraudulent misrepresentation, invasion of privacy by publication of private facts, false light invasion of privacy, intentional infliction of emotional distress, and unjust enrichment.

The district court recognized that a then-recent Minnesota Court of Appeals decision, *Cohen v. Cowles Media Co.*, 445 N.W.2d 248 (Minn.Ct.App.1989), upheld a cause of action for breach of contract when news organizations breach promises of confidentiality to sources. The district court concluded, however, that it was not bound by state courts' decisions on constitutional issues and that it was required to undertake an independent examination of the first amendment issues raised by the case. 733 F.Supp. at 1294. The district court held that the first amendment shielded

**3.** Ruzicka's experience of therapist abuse previously had earned her some local publicity and limited notoriety. In 1981, she sued the offending psychiatrist, charging him with improper sexual conduct. Ruzicka also sued the Minnesota Board of Medical Examiners for its alleged failure to supervise the doctor properly. In August, 1981, the Minneapolis Tribune ran an article about the suits. The article named Ruzicka, specified her age, her job with the County Attorney's Office, and her charge that the therapist had kissed and fondled her during therapy sessions. A July, 1982 article in the Tribune reported on a written agreement between the doctor and the Board of Medical Examiners and again named Ruzicka and described her allega-

tions. In 1984, Ruzicka was appointed to the Minnesota Task Force on Sexual Exploitation by Counselors and Therapists. Her appointment was reported in the Tribune. That same year, the St. Paul Pioneer Press ran an article on the Medical Board's handling of patient complaints which identified Ruzicka as a victim of therapist abuse and stated that she was currently a law student. Also in 1984, Ruzicka testified at a public hearing before the Minnesota legislature about the abuse she had suffered. Finally, in 1986, Ruzicka spoke about her experiences before a national conference on sexual exploitation. Her comments at the conference were reported in the Minneapolis Tribune, but she was not named.

journalists and news organizations from breach of contract suits arising from promises of confidentiality unless the plaintiff could prove specific and unambiguous terms of the confidentiality agreement and provide clear and convincing proof that the agreement was breached. 733 F.Supp. at 1300. The court found that Ruzicka had not met this burden and granted summary judgment against her on this count. In addition, the district court found Ruzicka's other state law claims meritless. 733 F.Supp at 1301–02.

III. *The Cohen Case*

Subsequent to the district court's decision in this case, the Minnesota Supreme Court reversed the Minnesota Court of Appeals in *Cohen*, holding that agreements between reporters and sources not to publish the source's identity did not constitute a legally enforceable contract under state law. *Cohen v. Cowles Media Co.,* 457 N.W.2d 199, 203 (Minn.1990), *rev'd on other grounds,* — U.S. —, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991). The Minnesota Supreme Court recognized that a journalist's promise of confidentiality to a source is a moral and ethical obligation, but reasoned that neither party considers such a promise to be a legally enforceable contract. *Id.* In addition, the court found contract law "an ill fit" to the unique circumstances of the reporter-source relationship, much as contract law is ill-suited to breaches of promises to marry and other ethical obligations. *Id.*[4] The Minnesota Supreme Court also held that promissory estoppel, with its more flexible and less rigid rules, may be a way to enforce such agreements. The Court then held that in determining whether injustice could only be avoided by enforcing the promise, first amendment principles required courts considering promissory estoppel to "balance the constitutional rights of a free press against the common law interest in protect-

ing a promise of anonymity." *Id.* at 205. After discussing the balance, the court concluded that the newspapers' promises to Cohen could not be enforced under promissory estoppel. *Id.*

The United States Supreme Court reversed the Minnesota Supreme Court's holding that the first amendment barred enforcement of the newspapers' promises under promissory estoppel. *Cohen v. Cowles Media Co.,* — U.S. —, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991). The Supreme Court held that the first amendment does not bar a cause of action against the news media for promissory estoppel. The Court then remanded the case to the Minnesota Supreme Court for further consideration of the promissory estoppel claim. The Minnesota Supreme Court's decision not to recognize a contract cause of action rested on state law grounds and was therefore not before the United States Supreme Court.

ANALYSIS

I. *Conflict of Laws*

Conde Nast argues that the Minnesota Supreme Court's decision in *Cohen* bars Ruzicka's cause of action for breach of contract. In response, Ruzicka argues for the first time in this lawsuit that New York law applies and relies upon *Doe v. American Broadcasting Companies,* 152 A.D.2d 482, 543 N.Y.S.2d 455 (A.D. 1 Dept.), *appeal dismissed,* 74 N.Y.2d 945, 550 N.Y.S.2d 278, 549 N.E.2d 480 (1989), which sustained a breach of contract action for breach of a journalist-source agreement.

Although the district court did not make a formal choice of law analysis, the court specifically concluded that Minnesota law applied to all issues in the case. *See* 733 F.Supp. at 1293–94. Ruzicka has not suggested why the district court's finding is incorrect, and we find no basis for concluding that it was in fact erroneous. Ruzic-

---

4. Commentators also have recognized that relationships between journalists and sources are exceedingly complex, richly textured, and fraught with ambiguities, making traditional strict liability principles of contract law unsuitable to resolve disputes between them. *See* Levi,

*Dangerous Liaisons: Seduction and Betrayal in Confidential Press–Source Relations,* 43 Rutgers L.Rev. 609 (1991); Note, *Promises and the Press: First Amendment Limitations on News Source Recovery for Breach of a Confidentiality Agreement,* 73 Minn.L.Rev. 1553, 1568–1574 (1989).

ka's reliance on New York law is raised for the first time in her reply brief.

 We conclude that Minnesota law applies. The agreement between Ruzicka and Dreifus was made in Minnesota, Minnesota is the plaintiff's residence, and the suit was brought in district court in Minnesota. The only contacts with New York are that the defendants reside there and that Dreifus and another Glamour magazine employee called Ruzicka from New York to confirm some of the article's facts. When analyzing choice of law questions, Minnesota courts consider the following five factors: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *Hime v. State Farm Fire & Casualty Co.*, 284 N.W.2d 829, 833 (Minn.1979).

The fact that the agreement was made in Minnesota and the interviews took place there shows that the predictability factor strongly favors applying Minnesota law. In addition, the better law factor also favors applying Minnesota law. The highest state court in Minnesota carefully considered the issues raised by enforcing reporter-source confidentiality agreements in the courts and concluded that Minnesota would not recognize these as binding contracts. In contrast, New York's intermediate court issued a short memorandum opinion which affirmed *without comment* the denial of summary judgment to the media defendant on a source's breach of contract and other state law claims. *Doe*, 543 N.Y.S.2d at 455.

## II. *Breach of Contract*

 This is a diversity case. As determined, we must apply Minnesota law. The Minnesota Supreme Court's decision in *Cohen* refusing to recognize a breach of contract cause of action against news organizations for breach of a confidentiality agreement rests entirely on state law grounds and controls our decision. There is no discussion of the first amendment in the Minnesota Supreme Court's decision on this issue. The court concluded that promises of confidentiality between journalists and sources are not legally enforceable under Minnesota law because such parties do not intend a binding contract, and this holding was not affected by the United States Supreme Court's reversal on the promissory estoppel issue. Thus, Minnesota law bars Ruzicka's breach of contract suit against these defendants. We therefore affirm the district court's rejection of Ruzicka's claim for breach of an express contract, but solely on the basis of the Minnesota Supreme Court's refusal in the *Cohen* case to sanction a contract cause of action in these types of cases.[5]

## III. *Promissory Estoppel*

 Ruzicka did not raise a promissory estoppel claim until the reply brief stage of this appeal. Subsequent to the district court's decision and the filing of the main appellate briefs in this case, the Minnesota Supreme Court held in *Cohen* that although breach of contract was not an available remedy in cases like this, a separate remedy under the doctrine of promissory estoppel may be available. *Cohen*, 457 N.W.2d at 203, 205. The doctrine of promissory estoppel implies a contract in law where none exists in fact. *Id.* at 203. A promise reasonably expected to induce definite action by the promisee which does in fact induce such action is binding under promissory estoppel if injustice can be avoided only by enforcing the promise. *Id.* at 203–04; *see also* Restatement (Second) of Contracts § 90(1) (1981).

 Normally, this court will not consider new claims advanced on appeal. In this case, however, we deem Ruzicka's promissory estoppel claim to be essentially in the same posture as the plaintiff's estoppel

---

5. The district court did not have the benefit of either the Minnesota Supreme Court's opinion or the latter United States Supreme Court decision. Under the circumstances, it is not necessary to discuss the first amendment analysis made by the district court.

claim in *Cohen*.[6] It would be somewhat incongruous for Cohen to be able to press his promissory estoppel claim even though never formally pled, while this court bars Ruzicka from doing the same. We stress that this case is in a unique procedural posture. Minnesota recognizes the claim of promissory estoppel as an alternative legal theory to enforce an implied contract at law and it is normally pled as a separate theory of recovery to be considered by the jury. *See, e.g., Dallum v. Farmers Union Cent. Exch., Inc.*, 462 N.W.2d 608, 611, 615 (Minn.Ct.App.1991). At least once prior to *Cohen*, however, the Minnesota Supreme Court had declined to recognize a contract cause of action in certain areas but held that promissory estoppel is still available, even though not formally pled. *See Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d 740, 747 (Minn.1983). In certain limited cases, then, it appears that promissory estoppel can be a viable theory of recovery even though

not pled separately from a traditional contract cause of action.

Rather than passing upon the merits of Ruzicka's promissory estoppel claim, we deem it prudent to remand this claim for consideration by the district court. If the district court finds that under Minnesota law it can consider the promissory estoppel claim on the pleadings as they exist, it should do so. On the other hand, if the district court deems the estoppel claim significantly separate from the breach of contract cause of action, the plaintiff should be allowed to amend her complaint to allege a separate claim for promissory estoppel. *See* Fed.R.Civ.P. 15. We express no opinion about whether Ruzicka can establish a viable cause of action for promissory estoppel under Minnesota law on these facts.[7]

## IV. State Law Tort Claims

▮ We also hold that the district court correctly granted summary judgment to the defendants on Ruzicka's other state law claims.[8]

---

**6.** Although the plaintiff in *Cohen* did not plead or urge liability under a promissory estoppel claim, the Minnesota Supreme Court did discuss promissory estoppel in light of the first amendment. The United States Supreme Court observed: "It can hardly be said that there is no First Amendment issue present in the case when respondents have defended against this suit all along by arguing that the First Amendment barred the enforcement of the reporters' promises to Cohen." — U.S. at —, 111 S.Ct. at 2517. In the present case, the district court relied on the first amendment to reject plaintiff's claim based upon an express breach of contract.

**7.** In remanding the promissory estoppel claim in *Cohen*, the United States Supreme Court stated:

The Minnesota Supreme Court's incorrect conclusion that the First Amendment barred Cohen's claim may well have truncated its consideration of whether a promissory estoppel claim had otherwise been established under Minnesota law and whether Cohen's jury verdict could be upheld on a promissory estoppel basis. Or perhaps the State Constitution may be construed to shield the press from a promissory estoppel cause of action such as this one. These are matters for the Minnesota Supreme Court to address and resolve in the first instance on remand.

— U.S. at —, 111 S.Ct. at 2519–20.

**8.** Ruzicka alleged five state law tort claims: (1) Ruzicka alleges the defendants committed

fraudulent misrepresentation. However, a representation about future acts is not fraudulent merely because the represented act does not happen, unless the promisor never intended to perform. *Cohen v. Cowles Media Co.*, 457 N.W.2d 199, 202 (Minn.1990), *rev'd on other grounds*, — U.S. —, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991); *Vandeputte v. Soderholm*, 298 Minn. 505, 508, 216 N.W.2d 144, 147 (1974). The district court correctly found that Dreifus and Glamour intended to keep their promise of masking Ruzicka's identity. (2) Ruzicka makes a claim for intentional infliction of emotional distress. To recover, she must show that the conduct complained of was extreme and outrageous, was intentional or reckless, caused emotional distress, and that the distress was severe. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn.1983). Ruzicka has not shown the conduct complained of was extreme or outrageous. (3) & (4) The district court was also correct in rejecting Ruzicka's two claims for invasion of privacy. Minnesota has refused to recognize any cause of action for invasion of privacy. *Stubbs v. North Memorial Medical Center*, 448 N.W.2d 78, 80–81 (Minn.Ct. App.1989), *pet. for rev. denied*, Jan. 12, 1990; *Hendry v. Conner*, 303 Minn. 317, 319, 226 N.W.2d 921, 923 (1975); *see also Price v. Viking Press, Inc.*, 625 F.Supp. 641, 651 (D.Minn.1985) (refusing to recognize invasion of privacy claim under Minnesota law in the first instance), *aff'd*, 881 F.2d 1426 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990). (5) Finally Ruzicka presses a claim for unjust

## CONCLUSION

The Minnesota Supreme Court's decision in *Cohen* that as a matter of state law reporter-source confidentiality agreements are not legally enforceable contracts bars Ruzicka's breach of contract claim. Ruzicka's state law tort claims are without merit.

The judgment of the district court granting summary judgment to Conde Nast and Dreifus on the breach of contract and state law tort claims is affirmed. The case is remanded for consideration of Ruzicka's promissory estoppel claim.

enrichment on the theory that through publication of the Glamour article in violation of her rights, a constructive trust in her favor was created. We agree with the district court that Ruzicka has not established the elements of unjust enrichment under Minnesota law.