**Robert Earl PIERCE Plaintiff**

v.

**THE CLARION LEDGER, An Operating Division of Gannett River States Publishing Corporation, et al. Defendants.**

No. CIV.A.4:05CV75LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

June 23, 2006.

Michael Farrell, Young Williams P.A., Jackson, MS, for Plaintiffs.

Justin L. Matheny, John P. Sneed, Phelps Dunbar, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Gannett River States Publishing Corporation and Gannett Satellite Information Network for summary judgment as to the breach of contract claim asserted in this cause by plaintiff Robert Earl Pierce. Pierce has responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that the motion is well taken and should be granted.

Plaintiff Robert Earl Pierce filed this lawsuit on March 30, 2005, alleging claims for negligent infliction of emotional distress, invasion of privacy and libel and seeking damages on account of a defamatory article about him in the April 18, 2003 edition of The Clarion Ledger newspaper.[1] The article, which was written by defendant Ana Radalet, a reporter with The Clarion Ledger's Bureau in Washington, D.C., described allegations in an internal memo prepared by Mississippi Bureau of Narcotics (MBN) agent Roy Sandefer and directed to then-director of the MBN, Frank Melton. Among other things, the Sandefer memo described Sandefer's interview of a confidential source who reported to Sandefer that Pierce, a former MBN official, had arranged the transfer of two state-owned planes, valued at $1 million, to the Gulf Coast area, one to the Harrison County Sheriff's Department and the other to the Hancock County Port Authority, for the personal use of a top aide to Senator Trent Lott. The Sandefer memo recited that Pierce had arranged the transfer to garner political influence so that he could secure appointment as head of the federal drug program in Mississippi, a position which he did subsequently receive. It also recited that Pierce had given away weapons that were confiscated during MBN raids. Radelat's article described the contents of the Sandefer memo, reported that the MBN had referred the matters addressed in the memo to the state auditor for further review, and recited that Pierce had been contacted and denied the allegations against him.

Soon after the article was published, on April 30, 2003, Pierce filed a lawsuit in the Circuit Court of Lauderdale County, Mis-

1. Defendants previously moved for summary judgment as to all these claims and the court granted that motion, but in the meantime, Pierce had moved for and was granted leave to amend to add the breach of contract claim that is the subject of the current motion for summary judgment.

sissippi, against Frank Melton and against Warren Buchanan, seeking damages for alleged negligent and/or intentional infliction of emotional distress. Therein, Pierce claimed that Melton had intentionally leaked the Sandefer memo to the press, and to Ana Radelat, in particular, knowing the allegations in the report were false, or at the very least without first corroborating any of the information therein or investigating the credibility of the "so called 'confidential informant.'" The suit further charged that Buchanan was the alleged "confidential source" referenced in the Sandefer memo, and that he had intentionally fabricated the allegations in the memo for the purpose of embarrassing Pierce and damaging his reputation.

In addition to filing that lawsuit, Pierce, by letters from his counsel dated May 1 and May 8, demanded a retraction by The Clarion Ledger. Ultimately, the Clarion Ledger declined, taking the position in a letter from its attorney that the story in question was privileged, as a fair report of an official proceeding. Plaintiff filed the present action two years later.

In the state court lawsuit filed by Pierce against Melton, Melton initially denied under oath that he had leaked the Sandefer memo. When he was later forced to admit he had lied and to admit that he had provided the memo, he claimed that he had asked Ana Radelat to keep it secret until she "checked it out." Pierce's breach of contract claim is based on his contention that The Clarion Ledger violated a contract between Radelat and Melton, of which Pierce was a third-party beneficiary, pursuant to which Radelat and Melton agreed that Melton would provide Radelat with a copy of the Sandefer memo and in return, Radelat would keep the information confidential "for the time being," and would not print the information "until the unsubstantiated allegations had been thoroughly checked out."

Defendants advance a number of grounds for summary judgment on Pierce's breach of contract claim, among which is their argument that there was no valid contract because Radelat's alleged promise not to publish the contents of the Sandefer memo was not supported by consideration, but was at most, a moral obligation, and not the basis for a legally enforceable contract. They further argue that the alleged agreement otherwise fails for lack of definiteness. Finally, they argue that since Pierce alleged in his Lauderdale County suit that Melton leaked the memo to Sandefer with the specific intention of its being published and embarrassing Pierce, Pierce should be judicially estopped from claiming in this case that Melton did not intend for the contents of the Sandefer memo to be published until they had been substantiated. The court need reach only one of these arguments, and that is defendants' claim that Radelat's alleged promise to Melton was not a valid contract enforceable by Pierce or anyone else.

As there are no Mississippi cases addressing the issue whether a breach of contract action will lie based on a reporter's breach of a promise of confidentiality or other similar promise to a source, this court must make an *Erie*-guess as to how the Mississippi courts would rule. In the court's opinion, the Mississippi Supreme Court would not find a contract here.[2]

**2.** Pierce argues in response to the motion that this court "cannot make an *Erie* guess that creates *new* law by adopting a novel theory or defense," but can only "make an *Erie* guess to interrupt [sic] *existing* state law." This court's charge is to predict how the Mississippi court would rule, and in doing so, may consult dicta in Mississippi state court decisions, the general rule on the issue, and rules in other states that Mississippi might look to,

In *Cohen v. Cowles Media Co.*, 457 N.W.2d 199 (Minn.1990), *rev'd on other grounds*, 501 U.S. 663, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991), the Minnesota Supreme Court held that agreements between reporters and sources not to publish the source's identity do not constitute legally enforceable contracts, pointing out that the law does not consider every exchange of promises to be binding, and reasoning as follows:

> We are not persuaded that in the special milieu of media newsgathering a source and a reporter ordinarily believe they are engaged in making a legally binding contract. They are not thinking in terms of offers and acceptances in any commercial or business sense. The parties understand that the reporter's promise of anonymity is given as a moral commitment, but a moral obligation alone will not support a contract. Indeed, a payment of money, which taints the integrity of the newsgathering function, such as money paid a reporter for the publishing of a news story, is forbidden by the ethics of journalism.
>
> .   .   .   .   .
>
> In other words, contract law seems here an ill fit for a promise of news source confidentiality. To impose a contract theory on this arrangement puts an unwarranted legal rigidity on a special ethical relationship, precluding necessary consideration of factors underlying that ethical relationship. We conclude that a contract cause of action is inappropriate for these particular circumstances.

*Cohen*, 457 N.W.2d at 203. *See also Ruzicka v. Conde Nast Publications, Inc.*, 939 F.2d 578, 582 (8th Cir.1991) (under Minnesota law, promises of confidentiality between journalists and sources are not legally enforceable as contracts). The court in *Steele v. Isikoff*, 130 F.Supp.2d 23, 31–32 (D.D.C.2000), adopting the reasoning of *Cohen*, held that "journalistic ethics effectively bar reporters and sources from entering traditional contracts relating to the provision of information or the publication of stories. Because ordinary contractual considerations are inapplicable in this context, a reporter-source confidentiality arrangement is more appropriately viewed as a moral commitment." *Id.* The court stated,

> As in Minnesota, moral obligations do not give rise to contractual liability under the laws of the District of Columbia or Virginia. *See, e.g., Baker v. District of Columbia*, 39 App. D.C. 42, 44–45 (App.D.C.1912) ("It is elementary in the law of contracts that a promise of a person competent, made under a sense of moral obligation ... is not legally binding."); *Mihalcoe v. Holub*, 130 Va. 425, 107 S.E. 704, 706 (1921) ("[A] mere moral obligation is not a sufficient foundation for an implied contract...."). Accordingly, because a reporter's promise of confidentiality is a moral obligation, not a contractual requirement, and because a moral obligation does not give rise to express or implied contractual duties, there is no contractual relationship between [the reporter and source]. Without contracts on which to base them, [the source's] breach of contract claims will be dismissed.

*Id.* at 31–32. This court also finds the reasoning in *Cohen* persuasive, and predicts the Mississippi Supreme Court

---

as well as law journals and treatises. *Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir.1999). The court does not consider that its ruling herein amounts to the adoption of "new" or "novel" law, but rather a reasonable prediction of what the Mississippi court would do, after due consideration of precedent from other jurisdictions, given the absence of dispositive precedent from Mississippi.

would, as well,[3] and would apply that reasoning to dismiss the claim herein.

This is not to say that a source has no cause of action when a promise is broken. In addition to ruling that the source had no viable cause of action for breach of contract, the Minnesota Supreme Court also held in *Cohen* that the First Amendment barred the source from suing for the reporter's breach of promise on a promissory estoppel theory, but this ruling was reversed by the United States Supreme Court, which held that a source may sue a reporter on a promissory estoppel theory if the reporter has broken a specific promise on which the source relied to his detriment. *Cohen v. Cowles Media Co.,* 501 U.S. 663, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991). However, the Supreme Court's reversal on the promissory estoppel issue did not affect the court's ruling on the breach of contract claim. *Ruzicka,* 939 F.2d at 582; *see also Steele,* 130 F.Supp.2d at 31 (observing that "[t]he Supreme Court accepted the Minnesota court's determination that reporter-source relationships are not contractual under Minnesota law, but disagreed with the Minnesota court's conclusion that 'enforcement of the promise of confidentiality under a promissory estoppel theory would violate defendants' First Amendment rights.' "). Moreover, Pierce has not alleged a promissory estoppel theory, and could not proceed on such a theory in any event because Pierce was not even aware of Radelat's alleged promise to check out the Sandefer memo before publishing it until years after the publication. As a third party who was ignorant of the promise, he could not prove that he relied on the alleged promise.

For these reasons, the court concludes that defendants' motion for summary judgment on Pierce's remaining claim for breach of contract should be, and is granted.

---

**3.** In Mississippi, as in Minnesota, Virginia and the District of Columbia, and elsewhere, "a moral obligation is, as a rule, insufficient to support a contract." *Woodson v. Hopkins,* 85 Miss. 171, 37 So. 1000 (Miss.1905).