ANNA B. CRAIN AND OTHERS v. JOHN BAUMGARTNER
AND OTHERS.[1]

October 19, 1934.

No. 30,096.

[1]Reported in 256 N. W. 671.

*Lewis E. Jones,* for appellants.

*Wyvell, Murphy, Johanson & Nelson,* for respondent.

*I. M. OLSEN, Justice.*

The plaintiffs appeal from an order denying their motion for a new trial.

The action is one to recover the possession, or, in the alternative, the value, of 564 bushels of rye, of which plaintiffs allege they are the owners and entitled to possession. It is further alleged that this rye was raised on land owned by plaintiffs and tilled by one Halvorson as their tenant and that defendants removed the rye from the land and unlawfully detain the same. The defendant John Baumgartner, hereinafter referred to as defendant, answered separately. He alleges that he is the owner and entitled to the possession of the rye described in the complaint, except 141 bushels thereof, which he concedes plaintiffs are entitled to. He further alleges that the rye was raised by him on the land described in the complaint under an agreement with plaintiffs whereby he tilled the land as their tenant from year to year; that he seeded said grain, furnished the seed therefor, and harvested and shocked the grain prior to the time that plaintiffs repossessed the land; that, by the agreement with plaintiffs, they were entitled to one-fourth of the crop, amounting to 141 bushels, which he held subject to their order.

The evidence, in substance, shows these facts: Plaintiffs are the owners of 160 acres of farm land on which this rye was raised. The land has no buildings on it, and no one resides thereon. The defendant resides on an adjoining farm, which he owns. During the years or farming seasons of 1930, 1931, and 1932 he farmed the plaintiffs' land, as their tenant, under informal oral understandings and agreements with them from year to year, whereby he was to render or pay to plaintiffs one-fourth of the crops raised thereon, delivered at an elevator. The rent so provided for was either delivered or paid for those years. In the fall of 1932 and before October 1 that year, defendant furnished the seed for and seeded a

crop of rye on the premises. Shortly after that there was some talk between the parties about continuing defendant's tenancy for the year or season of 1933, but no agreement was reached, and he was told, by statement left for him with his wife, to wait until he heard from the plaintiffs. By letter written by plaintiffs at Minneapolis on October 6, 1932, and received by defendant October 8, he was informed that the plaintiffs could not lease the land to him for 1933 and to stop further use or trespassing on the land. On October 21, 1932, defendant, in answer thereto, wrote a letter to plaintiffs, stating that he already had the land seeded to rye when plaintiffs were up there (referring to the time of the talk had about leasing the land for 1933), and that, under the circumstances, he could not give it up; in other words, a refusal to stop using the land. In the meantime, about October 10, the plaintiffs had given one Halvorson a written lease of the land for the season of 1933, up to November 1, 1933. Plaintiffs were and are residents of Minneapolis and visited the land only once or twice a year. Halvorson attempted to go onto the land and did plow a small part thereof, but desisted on objections being made by defendant. Halvorson also removed a pump standing in a pasture on the land. There is also some evidence that Halvorson placed locks on some of the gates in the fence inclosing the land and that defendant cut out one of the locks and at another place opened the fence and continued to go upon the land. Early in July defendant cut and harvested the rye crop on the land and shortly thereafter hauled the bundles across to his own land, there threshed the rye, and placed it in the granary on his own land.

In May, 1933, plaintiffs commenced an action in justice court in unlawful detainer against defendant to have him ejected from the premises, in which plaintiffs prevailed; but defendant appealed to the district court, and proceedings were stayed. Afterwards, in July, plaintiffs filed the statutory bond to obtain possession during pendency of the appeal, and writ of restitution was then issued and served on defendant July 14. At the time of the service of the writ of restitution, all of the rye, except three acres, had been cut and severed from the soil and was in bundles or shocks on the land.

The defendant shortly thereafter removed the bundles over onto his own land, as before stated, where the rye was threshed. As to the three acres not cut at the time plaintiffs repossessed the land under the writ, it appears that defendant did, immediately after the service of the writ, also cut said three acres and remove the shocks with the rest of the crop. But there was allowed to plaintiffs the amount of the rye on said three acres, aggregating 40 bushels, and same was included in the 181 bushels awarded to plaintiffs.

On motion of the defendant at the close of the evidence, the court directed a verdict as follows: That the defendant was entitled to the return of 383 bushels of the rye in question, or the value thereof, and that the plaintiffs were entitled to retain possession of 181 bushels of the rye. The jury found the value of the 383 bushels awarded to defendant to be $208.74.

It is strenuously urged that the court erred in directing a verdict and therefore should have granted a new trial.

The defendant was rightfully in possession of the land upon which the rye was raised during each of the years 1930, 1931, and 1932, at least during the farming season of each of said years. Whether his tenancy for 1932 terminated October 1, or at a later date, is not shown. Assuming that his tenancy under his oral lease terminated October 1, it is clear that at the time he sowed the rye he was in lawful possession of the land. If his tenancy contract terminated October 1, he held over as tenant at will, at least until he received the letter from plaintiffs on October 8. If that letter terminated his tenancy at will, his status then changed from a tenancy at will to a tenancy at sufferance. Thompson v. Baxter, 107 Minn. 122, 119 N. W. 797, 21 L.R.A. (N.S.) 575. Whether he be regarded thereafter as a tenant at sufferance or a trespasser is not very material. His rights to the crop, as long as he remained in possession, would be practically the same as far as this action is concerned. The evidence does not show that Halvorson, or anyone else, had possession of any of the land on which the rye was grown at any time prior to July 14, 1933, at which time the rye, except the three acres, had been cut and severed from the soil. It was then personal property and no longer a part of the real

estate. The evidence of Halvorson's occasional entrance upon parts of the land other than the field of rye and his placing locks upon some of the gates, not all being locked, is not sufficient to show actual possession of the land sowed to rye, under the circumstances here presented. The evidence, we think, is conclusive that defendant remained in possession of the rye field at least up to the time he was ejected on July 14, 1933. The fact that plaintiffs, in May, 1933, in their action for restitution of the premises, necessarily alleged and proved that defendant was in actual possession of the premises appears to be practically conclusive as a former adjudication on that question.

That even a trespasser who sows, cuts, and severs a crop from the soil before he is dispossessed is the owner of such crop is settled in this state. The remedy of the owner of the land in such a case is by action for trespass, mesne profits, rental value, or other damage suffered. Lindsay v. Winona & St. P. R. Co. 29 Minn. 411, 13 N. W. 191, 43 Am. R. 228; Nash v. Sullivan, 32 Minn. 189, 20 N. W. 144; Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479; Aultman & Taylor Co. v. O'Dowd, 73 Minn. 58, 75 N. W. 756, 72 A. S. R. 603; Bloemendal v. Albrecht, 79 Minn. 304, 82 N. W. 585; Lake v. Lund, 92 Minn. 280, 99 N. W. 884; Schuchard v. St. Anthony & Dakota Elev. Co. 176 Minn. 37, 222 N. W. 292.

■ The rye having been severed from the soil at the time plaintiffs repossessed the land, it was then personal property owned by defendant, and the fact that defendant shortly thereafter entered upon the land and hauled the rye over onto his own land did not transfer ownership thereof to the plaintiffs. Defendant may have been a trespasser in going onto the land to haul the rye over onto his own field after July 14. If so, plaintiffs have their remedy for such trespass. We do not agree with the statement in plaintiffs' brief that the one question presented in the case is whether defendant was in the legal or actual possession of the land at the time he hauled the rye from the premises to his own field and there threshed it. The question is whether, at the time he sowed, raised, and harvested the rye, that is, severed it from the soil, he was in actual possession of the land.

Some discussion is contained in plaintiffs' brief as to two written forms of leases submitted by plaintiffs to defendant for signing in April, 1930. As these leases were not signed by defendant and it was admitted by the parties at the trial that they never became effective, we need not consider them.

Plaintiffs' counsel sets out an excerpt from the case of Roehrs v. Thompson, 185 Minn. 154, 159, 240 N. W. 111, 113, reading as follows:

"Without exception it has been held that an owner of land obtaining possession either by means of legal process or by other means is entitled to whatever crops are at the time growing on the land. And no distinction is made in such cases between disseisors and mere trespassers."

The rule so recited is good law but is in favor of defendant here and does not aid plaintiffs. Other cases cited, where the one claiming the crop had been dispossessed from the land before the grain was severed from the soil, are not here applicable. There may be some cases from other jurisdictions not in harmony with the law established in this state. We do not feel justified in departing from the rule long followed in our own decisions.

■ It is argued that if defendant is entitled to recover he should have recovered all of the rye, except 40 bushels raised on the three acres not harvested at the time plaintiffs repossessed the land. Plaintiffs are not in a position to complain of the fact that defendant, by his answer, and the court, by the directed verdict, allowed to the plaintiffs more than they were entitled to receive.

Order affirmed.