Dan COHEN, Petitioner, Respondent,

v.

COWLES MEDIA COMPANY, d/b/a Minneapolis Star and Tribune Company, Petitioner, Appellant (C8–88–2631), Defendant (C0–88–2672),

Northwest Publications, Inc., Petitioner, Defendant (C8–88–2631), Appellant (C0–88–2672).

Nos. C8–88–2631, C0–88–2672.

Supreme Court of Minnesota.

Jan. 24, 1992.

Remanded on Petition for Rehearing March 17, 1992.

John P. Borger, John D. French, Faegre & Benson, Minneapolis (Randy M. Lebedoff, of counsel), for Cowles Media Co.

Paul R. Hannah, Hannah & Zenner, St. Paul, for Northwest Publications, Inc.

Elliot C. Rothenberg, Minneapolis, for Dan Cohen.

SIMONETT, Justice.

This case comes to us on remand from the United States Supreme Court. We previously held that plaintiff's verdict of $200,000 could not be sustained on a theory of breach of contract. On remand, we now conclude the verdict is sustainable on the theory of promissory estoppel and affirm the jury's award of damages.

The facts are set out in *Cohen v. Cowles Media Co.*, 457 N.W.2d 199, 200–02 (Minn. 1990), and will be only briefly restated here. On October 28, 1982, the Minneapolis Star and Tribune (now the Star Tribune) and the St. Paul Pioneer Press each published a story on the gubernatorial election campaign, reporting that Marlene Johnson, the DFL nominee for lieutenant governor, had been charged in 1969 for three counts of unlawful assembly and in 1970 had been convicted of shoplifting. Both newspapers revealed that Dan Cohen had supplied this information to them. The Star Tribune identified Cohen as a political associate of the Independent–Republican gubernatorial candidate and named the advertising firm where Cohen was employed.

Cohen then commenced this lawsuit against defendants Cowles Media Compa-

ny, publisher of the Minneapolis Star Tribune, and Northwest Publications, Inc., publisher of the St. Paul Pioneer Press Dispatch. It was undisputed that Cohen had given the information about Marlene Johnson's arrests and conviction to a reporter for each of the newspapers in return for the reporters' promises that Cohen's identity be kept confidential. The newspapers' editors overruled these promises. The disparaging information about the candidate leaked in the closing days of the election campaign was such, decided the editors, that the identity of the source of the information was as important, as newsworthy, as the information itself. Put another way, the real news story was one of political intrigue, and the information about the particular candidate was only a part, an incomplete part, of that story. Moreover, not to reveal the source, felt the editors, would be misleading, as it would cast suspicion on others; and, in any event, it was likely only a matter of time before competing news media would uncover Cohen's identity. Finally, the Star Tribune had endorsed the Perpich–Johnson ticket in its opinion section, and thus to withhold Cohen's identity might be construed as an effort by the newspaper to protect its favored candidates. On the same day as the newspaper stories were published, Cohen was fired.

The case was submitted to the jury on theories of breach of contract and fraudulent misrepresentation. The jury found liability on both theories and awarded $200,000 compensatory damages against the two defendants, jointly and severally. The jury also awarded $250,000 punitive damages against each newspaper on the misrepresentation claim. The court of appeals set aside recovery on the basis of fraudulent misrepresentation (and with it the punitive damages award), but affirmed recovery of the compensatory damages on the basis of a breach of contract. *Cohen v. Cowles Media Co.*, 445 N.W.2d 248, 262 (Minn.App. 1989).

We affirmed denial of recovery for fraudulent misrepresentation but also held that there could be no recovery for breach of contract. While the newspapers may have had a moral and ethical commitment to keep their source anonymous, we said this was not a situation where the parties were thinking in terms of a legally binding contract. *Cohen I*, 457 N.W.2d at 203. "To impose a contract theory on this arrangement," we said, "puts an unwarranted legal rigidity on a special ethical relationship, precluding necessary consideration of factors underlying that ethical relationship." *Id.*

The evidence at trial might be characterized as the pot calling the kettle black, with each side insinuating that the other's behavior was unethical or underhanded. We observed that when applying a contract analysis in this context "the focus was more on whether a binding promise was intended and breached, not so much on the contents of that promise or the nature of the information exchanged for the promise." *Id.* at 204. We concluded that a contract theory, which looks only to whether there was a promise and an acceptance, does not fit a situation where the essential concern is with the intrinsic nature of the overall transaction.

We went on in *Cohen I* to consider enforcement of a confidentiality promise under the doctrine of promissory estoppel. Under this theory, the court would consider all aspects of the transaction's substance in determining whether enforcement was necessary to prevent an injustice. We found this approach, which differed from the neutral approach of the classic contract analysis, best fit the kind of confidential commitments that news media in newsgathering made. There was, however, a problem. To shed the neutrality of a contract analysis for an inquiry into the editorial process of deciding whether the identity of the news source was needed for a proper reporting of a news story constituted, we concluded, an impermissible intrusion into the newspaper's First Amendment free press rights. Consequently, we held plaintiff Cohen's verdict was not sustainable. 457 N.W.2d at 205.

The United States Supreme Court granted certiorari and held that the doctrine of promissory estoppel does not implicate the First Amendment. The doctrine is one of

general application, said the Court, and its employment to enforce confidentiality promises has only "incidental effects" on news gathering and reporting, so that the First Amendment is not offended. *Cohen v. Cowles Media Co.,* — U.S. —, 111 S.Ct. 2513, 2518–19, 115 L.Ed.2d 586 (1991). The Court refused to reinstate the jury verdict for $200,000 in compensatory damages, stating this was a matter for our consideration, and remanded the case.

On remand, we must address four issues: (1) Does Cohen's failure to plead promissory estoppel bar him from pursuing that theory now; (2) does our state constitutional guarantee of a free press bar use of promissory estoppel to enforce promises of confidentiality; (3) does public policy bar Cohen from enforcing the newspapers' promises of confidentiality; and (4) if Cohen may proceed under promissory estoppel, should the case be remanded for retrial or should the jury's award of compensatory damages be reinstated?

## I.

■■■ Generally, litigants are bound on appeal by the theory or theories upon which the case was tried. *Johnson v. Jensen,* 446 N.W.2d 664, 665 (Minn.1989). Here, promissory estoppel was neither pled nor presented at the trial, and this court first raised the applicability of that theory during oral argument in *Cohen I. See* 457 N.W.2d at 204 n. 5. Nevertheless, this court considered promissory estoppel and held that the First Amendment barred recovery under that theory.

The defendant newspapers argue it is too late for Cohen to proceed now under promissory estoppel, and this case should be at an end. We have, however, on rare occasions exercised our discretion to allow a party to proceed on a theory not raised at trial. *See* Minn.R.App.P. 103.04 (appellate courts "may review any * * * matter as the interest of justice may require."). Thus in *Christensen v. Minneapolis Mun. Employees Retirement Bd.,* 331 N.W.2d 740, 747 (Minn.1983), we held that a public employee had a protectable interest in his pension based on a promissory estoppel theory, even though the plaintiff employee had raised only a contract theory at trial.

Indeed, in *Cohen I* we relied on *Christensen.* 457 N.W.2d at 203. *But see W.H. Barber v. McNamara–Vivant Contracting Co., Inc.,* 293 N.W.2d 351, 357 (Minn.1979) (refusing to consider promissory estoppel theory when not raised at trial).

We conclude it would be unfair not to allow Cohen to proceed under promissory estoppel. Throughout the litigation, the issue has been the legal enforceability of a promise of anonymity. Promissory estoppel is essentially a variation of contract theory, a theory on which plaintiff prevailed through the court of appeals. The evidence received at trial was as relevant to promissory estoppel as it was to contract, and the parties now have briefed the issue thoroughly. *See Babler v. Roelli,* 39 Wis.2d 566, 572–73, 159 N.W.2d 694, 697 (1968) (plaintiff who raised only contract theory at trial allowed to proceed under promissory estoppel on appeal because facts plaintiff relied on to support the new theory were of record and defendant had opportunity to respond to those facts at trial); *see also Ruzicka v. Conde Nast Publications, Inc.,* 939 F.2d 578, 582–83 (8th Cir.1991).

What we have here is a novel legal issue of first impression where this court has adopted an approach closely akin to the theory on which the case was originally pled and tried; under these unique circumstances we conclude it is not unfair to the defendants to allow the case to be decided under principles of promissory estoppel.

## II.

■■ The defendant newspapers next argue that in this case our own state constitution should be interpreted to provide broader free press protection than does the First Amendment. Article 1, section 3 of our state constitution provides: "The liberty of the press shall remain forever inviolate, and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right." As the newspapers point out, this language differs from the text of the First Amendment and could be read more expansively than the federal provision.

We may, of course, construe our free speech provision to afford broader protection than the federal clause; however, we decline to do so in this case. The enforceability of promises of confidentiality given a news source is an issue of first impression, and this case presents only one variation of such promises. The full First Amendment implications of this new issue may not yet have surfaced.

■ The newspapers also contend that enforcing the promises of confidentiality would contravene public policy because enforcement would limit the free flow of important information. Courts should not invalidate enforceable promises except in the clearest of cases. *See, e.g., Equitable Holding Co. v. Equitable Building & Loan Ass'n*, 202 Minn. 529, 536, 279 N.W. 736, 741 (1938). We are not prepared to say here that the newsworthiness of Cohen's identity had achieved a level of such grave importance as to require invalidation of the anonymity promise on grounds of public policy.

### III.

What, then, should be the appropriate disposition of this case? We conclude a retrial is unnecessary.

■ Under promissory estoppel, a promise which is expected to induce definite action by the promisee, and does induce the action, is binding if injustice can be avoided only by enforcing the promise. *Cohen I*, 457 N.W.2d at 204; Restatement (Second) of Contracts § 90(1) (1981). First of all, the promise must be clear and definite. As a matter of law, such a promise was given here. *Cohen I*, 457 N.W.2d at 204 ("[W]e have, without dispute, the reporters' unambiguous promise to treat Cohen as an anonymous source."). Secondly, the promisor must have intended to induce reliance on the part of the promisee, and such reliance must have occurred to the promisee's detriment. Here again, these facts appear as a matter of law. In reliance on the promise of anonymity, Cohen turned over the court records and, when the promises to keep his name confidential were broken, he lost his job. *Id.*

■ This leads to the third step in a promissory estoppel analysis: Must the promise be enforced to prevent an injustice? As the Wisconsin Supreme Court has held, this is a legal question for the court, as it involves a policy decision. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 698, 133 N.W.2d 267, 275 (1965); *see also Kramer v. Alpine Valley Resort, Inc.*, 108 Wis.2d 417, 422, 321 N.W.2d 293, 296 (1982) (third element is a question of law); *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn.1981) (this court on appeal found all three elements of promissory estoppel were present).

It is perhaps worth noting that the test is not whether the promise should be enforced to do justice, but whether enforcement is required to prevent an injustice. As has been observed elsewhere, it is easier to recognize an unjust result than a just one, particularly in a morally ambiguous situation. *Cf.* Edmond Cahn, *The Sense of Injustice* (1964). The newspapers argue it is unjust to be penalized for publishing the whole truth, but it is not clear this would result in an injustice in this case. For example, it would seem veiling Cohen's identity by publishing the source as someone close to the opposing gubernatorial ticket would have sufficed as a sufficient reporting of the "whole truth."

Cohen, on the other hand, argues that it would be unjust for the law to countenance, at least in this instance, the breaking of a promise. We agree that denying Cohen any recourse would be unjust. What is significant in this case is that the record shows the defendant newspapers themselves believed that they generally must keep promises of confidentiality given a news source. The reporters who actually gave the promises adamantly testified that their promises should have been honored. The editors who countermanded the promises conceded that never before or since have they reneged on a promise of confidentiality. A former Minneapolis Star managing editor testified that the newspapers had "hung Mr. Cohen out to dry because they didn't regard him very highly as

a source." The Pioneer Press Dispatch editor stated nothing like this had happened in her 27 years in journalism. The Star Tribune's editor testified that protection of sources was "extremely important." Other experts, too, stressed the ethical importance, except on rare occasions, of keeping promises of confidentiality. It was this long-standing journalistic tradition that Cohen, who has worked in journalism, relied upon in asking for and receiving a promise of anonymity.

Neither side in this case clearly holds the higher moral ground, but in view of the defendants' concurrence in the importance of honoring promises of confidentiality, and absent the showing of any compelling need in this case to break that promise, we conclude that the resultant harm to Cohen requires a remedy here to avoid an injustice. In short, defendants are liable in damages to plaintiff for their broken promise.

■ This leaves, then, the issue of damages. For promissory estoppel, "[t]he remedy granted for breach may be limited as justice requires." Restatement (Second) of Contracts § 90(1) (1981). *See generally Midamar Corp. v. National–Ben Franklin Ins. Co.*, 898 F.2d 1333, 1338–39 (8th Cir.1990); *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d at 701, 133 N.W.2d at 276. In this case the jury was instructed:

> A party is entitled to recover for a breach of contract only those damages which: (a) arise directly and naturally in the usual course of things from the breach itself; or (b) are the consequences of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made.

This instruction, we think, provided an appropriate damages remedy for the defendants' broken promise, whether considered under a breach of contract or a promissory estoppel theory. There was evidence to support the jury's award of $200,000, and we see no reason to remand this case for a new trial on damages alone.

Our prior reversal of the verdict having been vacated, we now affirm the court of appeals' decision, but on promissory estoppel grounds. We affirm, therefore, plaintiff's verdict and judgment for $200,000 compensatory damages.

Affirmed on remand on different grounds.