Jill RUZICKA, Plaintiff,

v.

**CONDE NAST PUBLICATIONS, INC.
and Claudia Dreifus, Defendants.**

Civ. No. 4–88–904.

United States District Court,
D. Minnesota,
Fourth Division.

May 26, 1992.

Elliot C. Rothenberg, Minneapolis, Minn., for plaintiff.

Thomas W. Tinkham, Leslie J. Anderson, Dorsey & Whitney, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, Chief Judge.

This matter is before the Court on defendants' motion for summary judgment. The motion will be granted.

## FACTS

The facts of this case are more fully set forth in the Court's earlier memorandum and order, *Ruzicka v. Conde Nast Publications, Inc.*, 733 F.Supp. 1289 (D.Minn.1990) (hereinafter *Ruzicka I*). The lawsuit arises out of an article about sexual abuse by therapists written by defendant Claudia Dreifus and published in the September 1988 issue of *Glamour* magazine, which is owned by defendant Conde Nast Publications, Inc. Dreifus interviewed plaintiff for the article, which discussed plaintiff's experience of sexual abuse by a therapist. Plaintiff alleges that she consented to be interviewed only upon the condition that she not be "identified or identifiable" in the published article. Pl.'s Ex. I at 36–37. Dreifus claims that while plaintiff "wanted some kind of masking," she was "very casual about it"; plaintiff's main concern, according to Dreifus, was that she was beginning a new job, and did not want her colleagues to identify her from the article. Def.'s Ex. A at 24. Plaintiff made only one specific request regarding information that she believed would identify her; she asked that information about a previous job and problems that she had experienced with her supervisor not appear in the article, and Dreifus honored that request.[1] Def.'s Ex. D at 37–38; Def.'s Ex. A. at 37–38.

---

1. In her memorandum, plaintiff asserts that defendants also breached their promise of confidentiality by stating in the article that she had financed her law school education with the settlement proceeds from her lawsuit against the abusing therapist, despite her request that the statement be deleted. Plaintiff backs up this assertion with an affidavit in which she states that she asked Dreifus to delete the statement from the draft. April 3, 1992 Affidavit of Jill Ruzicka ¶ 6. Defendants object to the affidavit testimony on the grounds that it conflicts with plaintiff's deposition testimony, in which she states that she objected to the statement, but does not state that she asked Dreifus to delete it. Def.'s Ex. D at 32–33.

Regardless of whether the deposition contradicts the affidavit, it is clear from the deposition testimony that plaintiff's concern with statement was that it was inaccurate. Plaintiff testified that the statement was not true, because although the settlement had helped finance her education, she had also worked to pay for school. According to plaintiff, Dreifus' response was that Dreifus' version of the story made for a happier ending. Plaintiff does not state, in either her deposition or her affidavit, that Dreifus agreed to delete the statement. Nor does she say that the statement is identifying. Because plaintiff has pointed to no evidence that Dreifus promised to delete the statement, and because in any event plaintiff's complaint about the statement was that it was inaccurate, not that it was identifying, Dreifus' inclusion of the statement is irrelevant to plaintiff's claim that defendants breached a promise of confidentiality.

The finished article used plaintiff's actual first name but gave her a pseudonymous surname. In addition to describing plaintiff's experience of abuse, the article states that plaintiff filed a complaint with the state board of medical examiners, sued the offending psychiatrist, and attended law school after the suit settled. The article also states that plaintiff is now a Minneapolis attorney and that she served on a state task force that helped draft a statute criminalizing therapist-patient sex. Plaintiff is in fact a Minneapolis attorney who filed a complaint with the state board, sued her therapist, attended law school after the suit settled, and served on a state task force on sexual abuse by therapists.

Plaintiff believes that these details, particularly the fact that she is a Minneapolis attorney who served on the state task force, make her identifiable. She knows of two person who did identify her from the story; both are her former therapists, and both had prior knowledge of her background and history of abuse. Plaintiff alleges that by including the details in the article, Dreifus violated her promise not to identify plaintiff or make her identifiable. Plaintiff claims that this breach caused her severe emotional and mental distress, which resulted in large medical expenses as well as a deterioration of work performance that ultimately cost plaintiff her job with a Minneapolis law firm.

Plaintiff sued Dreifus and Conde Nast for breach of contract, fraudulent misrepresentation, invasion of privacy, intentional infliction of emotional distress, and unjust enrichment. This Court granted summary judgment for defendants on all these claims. *Ruzicka I,* 733 F.Supp. 1289 (D.Minn.1990). The United States Court of Appeals for the Eighth Circuit affirmed the grant of summary judgment on these claims. However, noting that the Minnesota Supreme Court had recently applied the theory of promissory estoppel under similar circumstances, the Eighth Circuit remanded the case for a consideration of whether plaintiff had a viable claim under that theory. *Ruzicka v. Conde Nast Publications, Inc.,* 939 F.2d 578 (8th Cir.1991).

Defendants now move for summary judgment on the promissory estoppel claim.

## DISCUSSION

### I. *The Summary Judgment Standard*

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing,* 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir. 1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### II. *The Cohen Case*

As noted above, the Minnesota Supreme Court has recognized that promissory estoppel may apply to cases in which a

reporter breaches a promise of confidentiality. *Cohen v. Cowles Media Co.*, 479 N.W.2d 387 (Minn.1992). A thorough discussion of *Cohen*'s long and somewhat complicated history is necessary to understand its implications for the case at bar. In *Cohen*, the plaintiff provided potentially damaging information about a political candidate to reporters for two newspapers, on the condition that he not be identified as the source of the information. Although the reporters intended to keep their promises of confidentiality, their editors determined that because the plaintiff was closely allied with the candidate's opponent, the source of the information was too important to be concealed. They therefore overruled the reporters' promises and identified the plaintiff as the source of the information. The next day, the plaintiff was fired from his job.

The plaintiff sued the newspapers for fraudulent misrepresentation and breach of contract, and won a jury verdict on both claims. The Minnesota Court of Appeals reversed the fraudulent misrepresentation award, but upheld the breach of contract award. *Cohen v. Cowles Media Co.*, 445 N.W.2d 248 (Minn.Ct.App.1989). The appellate court's decision was appealed to the Minnesota Supreme Court, which agreed that the plaintiff had failed to prove fraudulent misrepresentation, but disagreed with the lower court's ruling on the contract claim. *Cohen v. Cowles Media Co.*, 457 N.W.2d 199 (Minn.1990). The supreme court noted that the hallmarks of a contract—offer, acceptance, and consideration—were seemingly present under the facts of the case. The court also recognized that journalistic ethics required reporters and editors to protect the confidentiality of their sources.

The court concluded, however, that the law should not superimpose a legal obligation upon the journalists' moral and ethical obligations. The court stated that, in the special milieu of newsgathering, *reporters and sources do not ordinarily believe that they are making legally binding contracts; rather, the parties understand a reporter's promise of anonymity to be a moral commitment.* Contract doctrine was,

in the court's view, ill-suited to a relationship founded on sensitive ethical considerations, because its rigidity and emphasis on form precluded courts from considering all the factors underlying the reporter-source relationship. Therefore, the court refused to apply a contract theory in cases involving the breach of a reporter's promise of confidentiality.

Rather than simply reverse plaintiff's breach of contract award, however, the court went on to consider whether recovery could be allowed under a promissory estoppel theory. Promissory estoppel, the court noted, was a flexible equitable doctrine that allowed courts to look beyond technical requirements and consider all the circumstances of a case. Applying the promissory estoppel doctrine, the court found that the first two requirements of that cause of action were satisfied: the plaintiff had proven that the reporters made an unambiguous promise to maintain his confidentiality, and that he relied on that promise to his detriment in giving them the information.

The court found, however, that recovery was precluded by the third element of promissory estoppel: that enforcement of the promise is necessary to avoid injustice. In reaching this result, the court noted that to determine whether it would be unjust to refuse to enforce the promise, it was necessary to balance the constitutional right to a free press against the common law interest in protecting a promise of anonymity. The court concluded that constitutional considerations outweighed equitable concerns and therefore held that enforcing the promise of confidentiality under a promissory estoppel theory would violate the defendants' rights under the First Amendment.

The plaintiff appealed this holding to the United States Supreme Court, which held that enforcement of the promise would not violate the First Amendment. *Cohen v. Cowles Media Co.*, — U.S. —, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991). The Court based its holding on the well-established rule that "generally applicable laws do not offend the First Amendment simply because their enforcement against the press

has incidental effects on its ability to gather and report the news." *Id.* 111 S.Ct. at 2518. The Court pointed out that Minnesota's doctrine of promissory estoppel did not target or single out the press; rather, it was generally applicable to the daily transactions of all Minnesotans. Thus, the court distinguished Minnesota's law of promissory estoppel from state laws that defined the content of publications that would trigger liability: because the promissory estoppel doctrine merely required the media to keep its promises, any limitations on the publication of truthful information were self-imposed. *Id.* 111 S.Ct. at 2519. Reasoning that the Minnesota Supreme Court's erroneous First Amendment analysis may have truncated its consideration of plaintiff's promissory estoppel claim, the Court remanded the case for reconsideration of that issue.

On remand, the Minnesota Supreme Court held that the plaintiff could indeed recover under a promissory estoppel theory. *Cohen,* 479 N.W.2d 387. The court reiterated that under that theory, a court may "consider all aspects of the transaction's substance in determining whether enforcement [is] necessary to prevent an injustice." *Id.* at 389. In this case, the court held, enforcement was necessary, because the defendants themselves testified that honoring promises of confidentiality was extremely important and there was no showing of a compelling need to break that promise. Thus, the court held the defendants liable to the plaintiff for their broken promise.

### III. *The Application of Cohen to the Case at Bar*

■ In *Cohen,* the Minnesota Supreme Court did not alter the elements of promissory estoppel. In order to prevail, plaintiff must establish that 1) defendants made a clear and definite promise; 2) defendants intended to induce plaintiff's reliance and plaintiff did rely on the promise to her detriment; and 3) the promise must be enforced to avoid injustice. *Cohen,* 479

N.W.2d at 391. Defendants argue that plaintiff's claim must fail, because she cannot establish any of these elements.

### A. Did Defendants Make a Clear and Definite Promise?

To establish her promissory estoppel claim, plaintiff relies on Dreifus' promise that plaintiff would not be identified or identifiable in the published article. The Court has already held that because plaintiff's name did not appear in the article, she was not identified. *Ruzicka I,* 733 F.Supp. at 1298. Therefore, plaintiff's only possible claim is that defendants breached their promise by publishing information that made her identifiable.

Defendants argue that the promise in this case is vastly different from the promise found enforceable in *Cohen:* in *Cohen,* the plaintiff sought to enforce a specific and unambiguous promise that he not be named; here, plaintiff relies on an inherently ambiguous promise that she not be made identifiable. Defendants point out that the only persons who plaintiff claims identified her from the article were therapists who were already familiar with much of plaintiff's story and who would therefore have been able to identify her no matter how much masking was done. Defendants argue that, unless Dreifus completely fabricated the published story, any account she wrote based on the interview would have rendered plaintiff identifiable to those already familiar with her story; the possibility that plaintiff would be identifiable was increased by the fact that many of the details regarding plaintiff's lawsuit against her therapist had previously been recounted in the local press. *See Ruzicka I,* 733 F.Supp. at 1291. The Court should not use its equitable power, defendants urge, to enforce a vague promise that would have been impossible for defendants not to breach.

Plaintiff makes three arguments in response.[2] First, she argues that the rules

---

**2.** Plaintiff also points out that New York courts have enforced promises to render a source unrecognizable in photographs and broadcasts. *See*

*Doe v. American Broadcasting Co.,* 152 A.D.2d 482, 543 N.Y.S.2d 455 (N.Y.App.Div.1989); *Anderson v. Strong Memorial Hospital,* 151

regarding specificity of language are less rigid for a promissory estoppel theory than they are for a contract theory; promises enforceable under promissory estoppel, she claims, need not be as definite with respect to all details as promises forming contracts. Second, she argues that the promise in this case was in any event more specific than that enforced in *Cohen*, because unlike the source in *Cohen*, she explicitly made nonidentifiability a condition of the interview. Finally, she argues that "identifiability" is a term of reasonably common usage among journalists. Plaintiff points out that under defamation law, liability may be imposed even where a person's name was not published, if the person could be identified from a description in the publication; thus, journalism texts advise journalists to shield identity in order to avoid defamation or invasion of privacy claims. She argues that because defendants are experienced journalists who understand the importance of shielding identity, they must have fully understood plaintiff's requirement of nonidentifiability and what was required to fulfill that requirement.

█ The Court concludes that each of plaintiff's three arguments is flawed. Plaintiff correctly notes that in *Cohen*, the Minnesota Supreme Court stated that the doctrine of promissory estoppel was more flexible than contract doctrine; that flexibility, however, was reflected in the court's consideration of whether enforcement of the promise was necessary to prevent injustice. Far from relaxing the first element of the cause of action, the court required proof of a clear and definite promise. As defendant points out, the clear and definite standard is stricter than the standard applicable under a contract theory, which requires a promise of "reasonable certainty." Restatement (Second) of Contracts § 33; *see* 8 Dunnell Minn. Digest, Contracts § 1.02(a) (contract will not be invalidated for indefiniteness where court can reason-

ably discern parties' intent from the words used and their reasonable implications). Thus, the Eighth Circuit has held that because the existence of a clear and definite agreement is an element of promissory estoppel, a plaintiff must prove a more distinct and specific agreement to prevail on a promissory estoppel theory than would be required under a contract theory. *Jungmann v. St. Regis Paper Co.*, 682 F.2d 195, 197 (8th Cir.1982).

█ The Court also disagrees with plaintiff's contention that the promise she relies on is more clear and definite than the promise at issue in *Cohen*. In *Cohen*, the defendants promised the plaintiff that he would not be identified as the source of the published information; despite that promise, the plaintiff was identified by name. Thus, as the *Cohen* court noted, both the terms of the promise and its breach were clear, unambiguous, and uncontested. A promise that a source will not be identifiable is inherently less definite than a promise that the source will not be identified. As the Court noted in its discussion of plaintiff's contract claim in *Ruzicka I*, a promise of unidentifiability raises difficult questions of definition and interpretation, because "[j]ust what will make a private figure identifiable depends on the information known by that person's friends and acquaintances. A reporter, for the most part, cannot know what information will threaten the anonymity of a source, unless the source specifies what facts should not be published." *Ruzicka I*, 733 F.Supp. at 1298.

█ Although the discussion of the promise in *Ruzicka I* occurred in the context of plaintiff's breach of contract claim, the Court's concern regarding the ambiguities inherent in a promise of nonidentifiability applies with equal force to the question of whether the promise extended to plaintiff was sufficiently clear and definite to support her claim of promissory estoppel.

Misc.2d 353, 573 N.Y.S.2d 828 (N.Y.Sup.1991). These cases are inapposite for two reasons. First, a promise to render a source physically unrecognizable by altering his appearance and voice is more concrete than a promise to tell a

person's story in a such a way that the person will not be identifiable. Second, the cases plaintiff cites were decided under a contract theory, a theory expressly rejected by the Minnesota Supreme Court in *Cohen*.

Without specifics regarding what information can and cannot be published, reporters and editors cannot know what information will make a source identifiable; only with the benefit of hindsight can it be determined what information made plaintiff identifiable to particular persons and what publication constituted a breach of the promise.

Plaintiff's recourse to defamation law to clarify the meaning of "identifiable" is unavailing. There is a wealth of case law regarding when a defamatory statement is considered to be "of or concerning" the plaintiff, despite the fact that the plaintiff was not explicitly named; there is, consequently, a body of literature advising journalists how to decrease the risk of lawsuits by making subjects less identifiable. Thus, it may be that "identifiable," as used in the context of potential defamation suits, is a term of common usage among journalists. It does not follow, however, that in the context of the agreement at issue here, the parties understood "identifiable" to refer to journalistic standards of identifiability that have developed in response to the requirements of defamation law. Defendants' task in this case was not to disguise plaintiff's identity enough to avoid a possible defamation suit, but to disguise her identity in a way that was consistent with the agreement that plaintiff would not be identifiable in the published article. As noted above, however, what facts would make plaintiff identifiable depended upon what facts about plaintiff the readers already knew.

In support of her argument that defendants understood the requirements of plaintiff's demand that she not be identifiable, plaintiff points to other instances in which defendants masked the identity of sources. Plaintiff points out that in other articles, defendants had altered or fabricated the facts regarding a source's background, conglomerated two or more case histories into one fictionalized subject, or provided only the sparsest descriptions of anonymous sources, referring to them by first name and occupation alone. The myriad methods of masking, however, only emphasize the ambiguity of a promise not to make a person identifiable. Identity has numerous facets, and a promise to conceal identity could—and apparently does—mean different things in different circumstances.

■ In summary, the Court concludes that the promise not to make plaintiff identifiable was insufficiently clear and definite to support recovery on a promissory estoppel theory. As the Court noted in *Ruzicka I*, the promise gave little guidance to the writer or editors of the article regarding what information they could and could not publish. Nor does the promise inform the Court regarding what information fell within the scope of the agreement. Because the promise that plaintiff relies upon is insufficiently clear and definite to support recovery under a promissory estoppel theory, defendants are entitled to summary judgment on plaintiff's promissory estoppel claim.

### B. Did Plaintiff Rely on the Promise to Her Detriment?

Defendants argue that even if the promise here were sufficiently clear and definite, plaintiff's claim would fail for lack of detrimental reliance. Defendants point out that in *Cohen*, the plaintiff disclosed information in reliance on the promise of confidentiality and, because he was named in newspaper accounts, lost his job the day the story broke. In contrast, defendants argue, the plaintiff in this case cannot point to any direct harm resulting from the published article. Plaintiff claims that the fear of recognition caused her emotional distress, and that her distress caused her work performance to deteriorate;[3] how-

---

**3.** Whether plaintiff's work performance deteriorated after the article appeared is in dispute. Plaintiff testified that she was unable to concentrate or to adequately fulfill her duties as an attorney after the article appeared, and that she therefore lost her job with a Minneapolis law firm. Plaintiff's supervisor, however, testified that plaintiff had performance problems from the beginning of her tenure, and that he observed no sudden decline in her work performance after the article appeared. Plaintiff responds that the supervisor's testimony is too biased to be credited, because he feared that plaintiff's lawsuit would affect the referrals his

ever, the only people who identified plaintiff were former therapists who already knew much of her story. Thus, defendants characterize plaintiff's claim as an attempt to hold them responsible for harm resulting from her unrealized fears of identification. Defendants argue that damages flowing from plaintiff's unrealized fears are too indirect and remote to have been foreseeable to defendants when the agreement was made.

As an initial matter, plaintiff disputes defendants' assertion that only two people already familiar with plaintiff's story identified her from the article. She points out that although the two former therapists knew she had been abused by a therapist, they did not know some of the details regarding the abuse that were included in the article;[4] she also argues that because *Glamour* magazine is carried by many libraries, the danger that she will be identified extends into the future. Moreover, plaintiff argues, the damages she suffered were foreseeable to defendants. The article itself stated that plaintiff's long-repressed memories of incest made her sensitive and vulnerable, and in the interview with Dreifus, plaintiff stated that betrayal of a trusting relationship, such as that with a therapist, was itself akin to incest. Plaintiff also points out that Dreifus knew that she was especially concerned about identifiability because she was beginning a new job; thus, plaintiff argues, defendants knew that a breach of their promise could damage her employment situation.

■ By focusing on whether plaintiff's damages are too indirect or remote to allow recovery, the parties have confused the detrimental reliance element of a promissory estoppel claim with the issue of what dam-

ages plaintiff could recover if she prevailed on her claim. As noted above, the second element of a promissory estoppel claim requires plaintiff to show that defendants intended to induce her reliance on the promise of nonidentifiability and that plaintiff in fact relied on that promise to her detriment. Defendants do not appear to dispute that the promise was given in exchange for plaintiff's consent to be interviewed; if the promise was given in exchange for plaintiff's consent, it seems clear that defendants intended to induce her reliance and that she in fact relied on the promise. Moreover, in addition to her own affidavit stating that she has suffered detriment in the form of medical expenses and lost earnings, plaintiff has submitted the affidavit of her treating psychiatrist, who testified that plaintiff was suffering from post-traumatic stress syndrome triggered by defendants' article. Affidavit of Hilary Sandall ¶ 2. The Court therefore concludes that plaintiff has raised a genuine factual question regarding whether her reliance on defendants' promise was detrimental.[5]

### C. Must the Promise be Enforced to Avoid Injustice?

■ Finally, defendants argue that plaintiff cannot show that the promise of nonidentifiability must be enforced to avoid injustice. Because the injustice element of a promissory estoppel claim involves a policy decision, it presents a legal question for the Court. *Cohen*, 479 N.W.2d at 387. Defendants argue that public policy does not favor enforcing the promise. This case, they argue, presents facts very different from those in *Cohen*. In *Cohen*, the plain-

---

firm received from the law firm that represents defendants in this action.

**4.** Plaintiff also asserts that the two former therapists did not know that she had been the victim of incest by her father, a fact disclosed in the article. The evidence, however, does not support this claim; both therapists testified that they did know that plaintiff had been an incest victim. Def.'s Ex. I at 26–27; Def.'s Ex. J at 24.

**5.** This is not to say that defendants' arguments regarding the nature of plaintiff's damages are

irrelevant; as defendants point out, the Minnesota Supreme Court did hold in *Cohen* that recovery for the breach of a promise of confidentiality is limited to those damages that arise directly and naturally from the breach or are the consequences of special circumstances known to the parties when the promise was made. *Cohen*, 479 N.W.2d at 392. The issue of the appropriate measure of damages, however, arises only after liability is established and does not affect plaintiff's ability to establish detrimental reliance.

tiff gave defendants a single, concrete piece of information, on the equally concrete condition that he not be identified as the source of the information; in violation of well-established journalistic principles, the defendants deliberately broke their promise of confidentiality, and the plaintiff lost his job as a direct result of their breach. Here, plaintiff agreed to provide extensive information about her experiences, much of which had been previously publicized,[6] subject to a vague requirement that she not be identifiable in the article recounting those experiences; despite defendants' efforts to mask plaintiff's identity, plaintiff fears that she is identifiable and claims that the distress resulting from her fears cost her her job. Defendants argue that while the equities may favor allowing recovery for knowing and undisputed violations of basic journalistic principles, they do not favor recovery where the promise is ambiguous, the breach inadvertent, and the damages remote.

Plaintiff responds that here, as in *Cohen,* defendants have acknowledged the importance of keeping promises of confidentiality: two *Glamour* editors testified that it was difficult to get people to discuss sexual matters without promises of confidentiality and that it is common to alter names and other facts to preserve confidentiality. Pl.'s Ex. I, Deposition of Rona Cherry at 17, 23–24 & Deposition of Linda Peterson at 32–35. In fact, plaintiff points out, even in the article at issue in this suit, defendants shielded the identity of sources other than plaintiff. Moreover, plaintiff argues that here, as in *Cohen,* defendants have pointed to no compelling need to renege on their promise; they make no claim that plaintiff's identity itself was newsworthy. Finally, plaintiff contends that defendants' conduct in this case was even more unethical and underhanded than the conduct of the *Cohen* defendants: in *Cohen,* the plaintiff approached the press with information

whose publication served his own interests; here, defendants solicited information from plaintiff to be published for their own profit and, after receiving the information, ignored the condition upon which it was offered. In these circumstances, plaintiff argues, enforcement of the promise is necessary to avoid injustice.

■ The Court is not persuaded by plaintiff's argument. This case is substantially different from *Cohen* because neither the promise nor the breach is clear. The defendants in *Cohen* made a conscious and calculated decision to violate an unambiguous promise not to name the plaintiff. The defendants here attempted to mask plaintiff's identity, but, in plaintiff's opinion, failed to accomplish their goal. As noted above, however, the extent to which plaintiff could be identified from the article depended upon what facts her acquaintances already knew; because defendants did not know what plaintiff's acquaintances knew, they had no way of knowing what facts would identify plaintiff. Far from preventing injustice, enforcing such an ambiguous promise could create injustice by placing on editors and reporters the impossible burden of guessing at what steps such a promise requires. Therefore, the Court holds that plaintiff cannot satisfy the third element of a promissory estoppel claim.

## IV. *Constitutional Issues*

■ Plaintiff argues that failure to enforce the agreement in this case would violate plaintiff's rights under the Due Process Clause, the Equal Protection Clause, and the Contact Clause. Plaintiff's argument is, in short, that implied contracts created through promissory estoppel enjoy the same constitutional protections as conventional contracts, and that the United States Constitution guarantees plaintiff the right to enter into contracts and receive the benefits of them. Plaintiff's arguments, of course, presuppose a

---

**6.** Plaintiff objects to defendants' reliance on the fact that parts of her story had already been widely publicized. She asserts that she never sought publicity and that certain facts in the article, such as the graphic details regarding the sexual abuse by her therapist and her history of incest, had not been previously publicized. Regardless of whether plaintiff sought prior media attention, the fact that she received it is relevant to the Court's consideration of the equities in this case.

valid agreement under state law. Because plaintiff has not established a valid agreement under Minnesota's law of promissory estoppel, her constitutional claims must fail.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that defendants' motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.