*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0169**

Kimbel R. Raden d/b/a Walen R. Farms,
Appellant,

vs.

William L. Hess d/b/a Hess Farms,
Respondent

**Filed August 8, 2016
Affirmed
Worke, Judge**

Roseau County District Court
File No. 68-CV-15-318

Andrew Carlson, St. Louis Park, Minnesota (for appellant)

Dennis H. Ingold, Roseau, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Toussaint, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant lessee challenges the summary judgment dismissal of his claims of conversion, civil theft, and unjust enrichment against respondent subsequent lessee. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

In April 2009, M.W. leased 1,848 acres of farmland (the property). In May 2011, M.W. subleased the property to appellant Kimbel R. Raden d/b/a Walen R. Farms. M.W. and Raden signed four sublease agreements between May and July 2011. The first two subleases state that the sublease was for the "2011 season." The last two subleases state that the sublease was "for the year 2011." Raden did not reside on the property. In the fall of 2011, Raden planted winter wheat on the property.

In April 2012, M.W. subleased the property to respondent William L. Hess d/b/a Hess Farms. While preparing the property for planting, Hess noticed that approximately 10% of the property contained winter wheat that was not maintained or fertilized. Because he did not want the acres to go to waste, Hess subsequently fertilized the winter wheat and harvested a small amount.

Hess stated that he was listed at the Farm Service Agency as the "operator" of the property for 2012 and that he was never aware of a sublease between M.W. and Raden for 2012. In April 2015, Raden filed a complaint against Hess alleging conversion, civil theft, and unjust enrichment. Hess moved for summary judgment, and the district court granted Hess's motion. This appeal follows.

**D E C I S I O N**

Raden argues that the district court erred by granting summary judgment. "When reviewing a decision to grant summary judgment, [an appellate court] examine[s] whether there are genuine issues of material fact and whether a party is entitled to judgment as a matter of law." *Hegseth v. Am. Family Mut. Ins. Grp.*, 877 N.W.2d 191,

193 (Minn. 2016). An appellate court reviews de novo whether a genuine issue of material fact exists and whether the district court erred in its application of the law. *Commerce Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 773 (Minn. 2015). Evidence is viewed "in the light most favorable to the party against whom summary judgment was granted." *Id.* "[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case . . . ." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

***Holdover tenant***

Raden first argues that the district court erred by concluding that he was not a holdover tenant. A holdover tenant is "[s]omeone who *remains in possession* of real property after a previous tenancy . . . expires, thus giving rise to a tenancy at sufferance." *Black's Law Dictionary* 1695 (10th ed. 2014) (emphasis added). Raden's claim that he was a holdover tenant is unpersuasive.

Here, Raden failed to remain in "possession" of the property after his lease for the year 2011 ended. "Possession" means: "The fact of having or holding property in one's power; the exercise of dominion over property." *Id.* at 1351. Contrary to Raden's argument, the presence of his unharvested winter wheat did not establish power to hold the property or exercise dominion over it after the lease for 2011 ended.

In *Mehl v. Norton*, the supreme court stated:

> Growing crops are part of the land, and whether tenant or trespasser, an occupant's title to grown crops is dependent upon possession of the land, in the absence of special

3

> contract. *Loss of possession in law terminates his right to the land and the crops.* An owner who obtains possession of his land acquires title to all crops growing on the land at the time without liability to the former occupant as in the case of improvements and similar cases . . . .

201 Minn. 203, 205–06, 275 N.W. 843, 844–45 (1937) (emphasis added) (citations omitted).

In *Crain v. Baumgartner*, the supreme court also analyzed whether the presence of crops constitutes possession of real estate. *See* 192 Minn. 426, 429–30, 256 N.W. 671, 673 (1934). The supreme court stated that a former tenant's rights to a rye crop would remain the same "so long as he remained in possession" of the land. *See id.* at 429, 256 N.W. at 673; *see also Gallager v. Nelson*, 383 N.W.2d 424, 426 (Minn. App. 1986) (recognizing that a person may lose possession of real estate before his crops are harvested), *review denied* (Minn. May 22, 1986). The court in *Crain* further described that "occasional entrance upon parts of the land other than the field of rye" and "placing locks upon some of the gates . . . is not sufficient to show actual possession of the land sowed to rye." 192 Minn. at 430, 256 N.W. at 673.

Following *Mehl* and *Crain*, the presence of Raden's crops did not establish his possession of the real property after his lease for the year 2011 ended. Therefore, because Raden lost title to his crops when his lease expired and because neither Raden, nor his representatives, visited the property until August 2012, seven months after his lease expired, Raden was not a holdover tenant.

4

*Tenancy at will*

Raden next argues that the district court erred by concluding that he did not have a tenancy at will in 2012. A tenancy at will is "a tenancy in which the tenant holds possession by permission of the landlord but without a fixed ending date." Minn. Stat. § 504B.001, subd. 13 (2014).

Raden argues that he had a tenancy at will in 2012 because M.W. gave him permission to remain on the property. We are not persuaded because even if M.W. orally agreed to lease the property to Raden for 2012, the lease still contains a "fixed ending date." *See id.* (stating that a tenancy at will must be "without a fixed ending date").

Here, Raden states that M.W. agreed to continue the lease with Raden into 2012. An associate of Raden stated that he believed Raden "had a [two] year lease" for the years 2011 and 2012. Another associate of Raden stated: "I knew [Raden] had a lease for 2012." These statements support the conclusion that Raden had a lease with a "fixed ending date" of December 31, 2012. The record does not indicate that the alleged agreement would apply to the year 2013 or beyond, or that the parties were operating on a year-to-year basis. *See State Bank of Loretto v. Dixon*, 214 Minn. 39, 43, 7 N.W.2d 351, 353 (1943) (stating that "a tenancy from year to year . . . is substantially a tenancy at will"). Therefore, the district court did not err by concluding that Raden did not have a tenancy at will.

*Promissory estoppel*

Raden also relies on the doctrine of promissory estoppel. Promissory estoppel "requires proof that . . . a clear and definite promise was made, . . . the promisor intended

5

to induce reliance and the promisee in fact relied to his or her detriment, and . . . the promise must be enforced to prevent injustice." *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). One party must have reasonably relied on statements or promises by the other party. *BankCherokee v. Insignia Dev., LLC*, 779 N.W.2d 896, 903 (Minn. App. 2010) (emphasis added), *review denied* (Minn. May 18, 2010). Here, M.W. made the alleged promise, not Hess, so Raden's promissory estoppel claim fails.

Relying on *Dale v. Fillenworth*, Raden argues that his argument does not fail despite the fact that Hess never made a promise to Raden. *See* 282 Minn. 7, 162 N.W.2d 234 (1968). Raden argues that "*Dale* states that the crucial question is not who made the promise upon which the tenant relied, but rather who benefited from the tenant's services and material." Raden's reliance on *Dale* is misplaced. First, *Dale* is not a promissory-estoppel case. *See generally id.* Second, in *Dale*, the plaintiff entered into an oral lease with an attorney acting on behalf of the farm and its owner. *Id.* at 8-9, 162 N.W.2d at 235-36. Here, Raden is attempting to hold Hess to a promise that was never made by Hess or someone acting on Hess's behalf.

Raden's argument also fails because the alleged oral promise need not be enforced to prevent injustice. The question of whether a promise must be enforced to prevent injustice is a question of law for an appellate court. *See Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992). "[T]he test is not whether the promise should be enforced to do justice, but whether enforcement is required to prevent an injustice." *Id.*

Here, Raden could attempt to recover damages from M.W.  Therefore, the district court did not err by denying Raden's promissory-estoppel argument.

**Affirmed.**