DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from the summary judgment issued by the Lucas County Court of Common Pleas, granting summary judgment in favor of an employee regarding alleged compensation owed to him under an employment contract. Because we conclude that no material facts remain in dispute and appellee was entitled to judgment as a matter of law, we affirm.
 {¶ 2} In January 2004, appellee, Vijay Kamlani, sued appellant, A.C. Leadbetter Son, Inc., for wages and bonuses allegedly owed to him as an employee.[1] Appellant answered, including various affirmative defenses, but filed no counterclaim. Appellee filed a motion for partial summary judgment, which appellant opposed. The following facts were presented in depositions, affidavits, and other documents.
 {¶ 3} Appellee, an engineer, began working for appellant in 1988, under a written offer of employment which included eligibility for bonuses, the terms of which would be agreed upon between CEO James Leadbetter and appellee. In 1993, after three and one-half years of negotiations, the parties signed an additional "Bonus Agreement" which provided the bonus calculation formula. Between 1990 and 1999, appellant paid appellee a portion of the agreed bonus amounts, but still owed appellant $454,031.80 by late 1999. In November 1999, appellant issued a letter to appellee regarding "Paydown assurance on outstanding earned bonus account." In that letter, signed by Leadbetter and Ray Oak, the company accountant, appellant documented the parties' discussions and agreement that it owed appellee $454,031 in unpaid bonus compensation. Appellant further outlined a monthly payment schedule to appellee toward outstanding bonuses owed, agreeing to payments of a minimum of $20,000 per month with the entire balance to be paid by November 30, 2001. Appellant defaulted on these payments.
 {¶ 4} In December 2003, appellee's employment with appellant ended. On January 8, 2004, appellee filed suit, alleging that appellant breached the bonus agreement, as well as the employment contract, by failing to pay him the following: $454,031 in earned bonuses; $27,000 in unpaid salary; $13,207.83 for unused accumulated vacation; and $3,604.78 in withheld but undeposited 401(k) deductions.
 {¶ 5} In its response in opposition to appellee's summary judgment motion, appellant argued that the $454,031 bonus amount was "tentative" and was subject to change or reduction if additional funds were needed to "fix any defects in the project." Leadbetter alleged that the company had spent more than $100,000 to fix problems allegedly caused by appellee's poor work performance. Leadbetter also stated that the parties had an "understanding" that appellee's bonus could be reduced by any expenses that made the project less profitable. Appellant argued that material issues of fact remained in dispute as to how much, if any, bonus money was owed to appellee.
 {¶ 6} Appellant also argued that because of a company policy change, appellee could not carry over from year to year more than two weeks vacation time, and was not entitled to payment from vacation time accrued prior to 2003. Finally, appellant claimed that, since appellee's departure from the company, it had discovered emails which allegedly indicated that appellee had been conducting business for his own private interest on company time, in violation of his 1988 employment agreement. Appellant claimed that this further created issues of material fact regarding whether appellee was owed any of his unpaid wages.
 {¶ 7} The trial court granted in part and denied in part appellee's motion for partial summary judgment. The court ruled in favor of appellee regarding the bonus amount owed, determining that nothing in the employment contract provided for an offset in appellee's bonuses for additional monies expended which "reduced the profitability of those projects * * *." Interpreting the contract as to appellant's employment and bonuses, the court found that the parol evidence rule precluded adding terms which were by "understanding" of the parties, as alleged by Leadbetter. The court found the offer letter, bonus agreement, and paydown assurance letter to be clear and unambiguous, none of which referred to any offsets to the bonuses. Furthermore, the court noted that appellant had not filed any counterclaims for damages or other injuries against appellee. Consequently, the court granted appellee his bonus amount of $454,031.
 {¶ 8} The court further found that Leadbetter acknowledged in deposition that the company owed appellee $22,291 in back wages. The court determined that appellant had failed to establish any evidence discovered after this deposition which would permit the company to withhold payment of these wages. Therefore, appellee was entitled to payment of his back wages. In addition, since it was unopposed, the court also granted summary judgment to appellee for the withheld but unpaid 401(k) contributions.
 {¶ 9} Finally, the court denied appellee's claim for accrued vacation time because the evidence failed to establish that appellant had changed the record of appellee's accrued vacation time in response to his lawsuit.
 {¶ 10} Appellant now appeals from that judgment, arguing the following two assignments of error:
 {¶ 11} "1. The trial court erred by granting the Plaintiff-Appellee's motion for summary judgment as to his entitlement to employee bonuses, since the Defendants-Appellants presented evidence which created a genuine issue of material fact as to whether the Plaintiff-Appellee breached his employment contract with the Defendants-Appellants, by failing to exercise reasonable care and diligence in the performance of his duties.
 {¶ 12} "2. The trial court erred by granting the Plaintiff-Appellee's motion for summary judgment as to his entitlement to past salary, since the Defendants-Appellants presented evidence which created a genuine issue of material fact as to whether the Plaintiff-Appellee breached his employment contract with the Defendants-Appellants, by engaging in practices, on company time, which were harmful to the interests of the Defendants-Appellants and which also were for Plaintiff-Appellee's private interest in competition with the Defendants-Appellants' interests."
 I. {¶ 13} In its first assignment of error, appellant argues that the trial court erred in granting summary judgment because there is a genuine issue of material fact of whether appellee breached his employment contract by "failing to exercise reasonable care and diligence in the performance of his duties."
 {¶ 14} The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Civ.R. 56(C); Lorain Natl. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
 {¶ 15} A motion for summary judgment first compels the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. If the moving party satisfies that burden, the nonmoving party must then produce evidence as to any issue for which that party bears the burden of production at trial. See Dresher v. Burt (1996), 75 Ohio St.3d 280, 295, limiting Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, paragraph three of the syllabus. Finally, it is well established that an appellate court reviews summary judgments de novo; we review such judgments independently and without deference to the trial court's determination. Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711.
 {¶ 16} Here, although not specifically labeled as such, appellant asserted in its answer facts which essentially constitute the defense of "recoupment." Recoupment is an affirmative defense, arising out of the same transaction as a plaintiff's claim, which entitles the defendant to reduce the amount demanded, but only to the extent sufficient to satisfy the plaintiff's claim. Riley v. Montgomery (1984),11 Ohio St.3d 75, 77. As an affirmative defense, recoupment does not have to be asserted as a counterclaim. Haddad v. English (2001),145 Ohio App.3d 598, 602. Under a recoupment defense, the defendant alleges that "`the plaintiff's claim is based on a particular contract or transaction and that to entitle the plaintiff to the sum claimed, he must prove compliance with certain obligations of the contract; that he failed to do so; and therefore that the defendant has been so damaged in the transaction that the plaintiff is not entitled to recover.'" Cauffiel Machinery Co.v. Eastern Steel Metal Co. (1978) 59 Ohio App.2d 1, 6, quoting 20 American Jurisprudence 2d 235, Counterclaim, Recoupment, and Setoff, Section 11.
 {¶ 17} In this case, the February 1993 Bonus Agreement provides the terms for calculating appellee's yearly bonuses which were to be ten percent of the "adjusted total actual gross profits of eligible profits." There is a provision which defines "total gross profits of eligible projects" as the "sum total of all the actual sales of the eligible projects LESS the actual direct costs incurred during the fiscal year in question thereby giving the actual gross profits of eligible projects which should be adjusted for any future write offs or potential future costs/contingencies related to the projects considered above."
 {¶ 18} We read this provision to mean that the base amount upon which the bonus is based may be reduced by any anticipated costs which, at the time of computation, had not yet occurred. If the total gross profits were zero, then appellee would receive no bonus. Likewise, any current expenses or costs for each fiscal year would reduce the total gross profits. Nothing in the contract, however, provides for the charge-back or recovery of profit losses from previously paid or earned bonuses. The Bonus Agreement merely provided that appellee would get a percentage of gross profits from eligible projects, not that he would be held responsible for any losses incurred on those projects.
 {¶ 19} Our review of the evidence submitted demonstrates that it is undisputed that, in November 1999, appellant agreed that it owed appellee $454,031 in outstanding unpaid bonuses. Since nothing in the record indicates that any specific calculations for this amount, we must presume that appellant's accountant used the formula provided in the 1993 Bonus Agreement. Nothing in the memo or the payment schedule refers to any possible future cost or expense deductions.
 {¶ 20} It is also undisputed that, due to its financial difficulties, from December 1999 to December 2003, no bonuses were calculated or paid by the company since there were no gross profits. The only evidence provided by appellant as to losses or expenses incurred by it due to appellee's alleged non-performance of his job, were from projects after the 1999 bonus amounts were calculated an agreed upon. Again, nothing in the record shows that any of the alleged later expenses were related to the calculations for bonuses from prior years. What appellant is really trying to do is to hold appellee accountable for the company's losses by reducing bonus amounts that, if paid in a timely manner, would have nothing to do with later bonus payments. Other than Leadbetter's bare, self-serving statements, nothing in the record shows that appellee did, in fact, cause the company to incur losses or that these losses had anything to do with bonus amounts owed some four years earlier. No expert testimony was offered to show that appellee's job performance was so deficient as to be the cause of any of the alleged problems with projects.
 {¶ 21} To the contrary, CEO Leadbetter stated that, until the last four months of 2003, appellee had performed "capably and responsibly" and "did a good job." Leadbetter also noted that appellee had received a salary "demotion" due solely to economics and that the company failed to make the scheduled bonus payments on time simply because "business was bad." Leadbetter cited no specific deficiency in performance by appellee, but stated only that appellee became "disinterested" and his drive and effort diminished. Our review of the record suggest that, assuming this observation to be true, appellee's "lack of interest" was a reasonable reaction to appellant's reduction in appellee's pay and its failure to pay appellee four months of wages and the substantial amount of bonus money owed.
 {¶ 22} Furthermore, even if appellee's performance on 2003 projects in some way caused current projects to be unprofitable, the remedy provided for in the Bonus Agreement was only that appellee would not receive a bonus. Since appellee received no bonuses after 1999, appellant may not simply deduct its losses from bonuses appellee had already earned from previous projects and years.
 {¶ 23} We conclude, therefore, that the Bonus Agreement does not provide for appellee's contribution to company losses, other than as a function of whether bonuses were earned, and appellant failed to establish that appellee failed to adequately perform on jobs related to the bonuses calculated prior to November 1999. Thus, we further conclude that there was no evidence presented which established that appellee breached his duty of care under the employment contract or caused damages which could be deducted from the bonus owed in 1999. Consequently, the trial court properly granted summary judgment as to appellant's recoupment defense.
 {¶ 24} Accordingly, appellant's first assignment of error is not well-taken.
 II. {¶ 25} In its second assignment of error, appellant asserts that summary judgment was improperly granted because appellee breached his employment contract by engaging in practices, on company time, which were harmful to appellant's interests and which showed appellee's private interest in competition with appellant's interests. Again, although not specifically designated, appellant's argument encompasses the "faithless servant" doctrine.
 {¶ 26} The "faithless servant" doctrine is based on an implied condition of employment that employees will carry out their duties in good faith and not act to the detriment of their employers. See Cartwright v. Falls Heating Cooling, Inc.,
(Jun. 29, 1994), 9th Dist. No. 16079; Roberto v. Brown Cty. Gen.Hosp. (1989), 59 Ohio App.3d 84, 87. This doctrine provides that:
 {¶ 27} "[D]ishonesty and disloyalty on the part of an employee which permeates his service to his employer will deprive him of his entire agreed compensation, due to the failure of such an employee to give the stipulated consideration for the agreed compensation. * * * However, an employee's compensation will be denied only during his period of faithlessness." Roberto,
supra, at 86, citing Bessman v. Bessman (1974), 214 Kan. 510,520 P.2d 1210 (emphasis added).
 {¶ 28} In this case, appellant submitted five emails in support of its defense that appellee had breached his employment agreement. One email on November 11, 2003, which is neither to nor from appellee, references his possible involvement in the start up of a new company and about attending a conference in Texas to "bring hydrogen infrastructure entrepreneurs and potential investors together." The remaining four emails, from June, September, October, and December 2003, either from or to appellee, relate solely to social or personal financial matters. Although these emails are unrelated and irrelevant to appellee's job, they provide no evidence of dishonesty or disloyalty which would have "permeated" appellee's service to appellant. Moreover, the time period of these emails is not contemporaneous with the time when appellee's bonus payments were earned or should have been made. In addition, no evidence was offered to show how these emails caused damage to appellant. Therefore, since no issues of material facts remain in dispute and reasonable minds could only conclude that appellee was entitled to judgment as a matter of law, the trial court properly granted partial summary judgment as to appellee's bonus and wage claims.
 {¶ 29} Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 30} The judgment of the Lucas County Court of Common Pleas is affirmed.
 {¶ 31} Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Singer, P.J., concur.
[1] Appellee later amended his complaint, adding Alchas, Inc., as a defendant. Since the partial motion for summary judgment was granted against only A.C. Leadbetter Son, Inc., we refer only to Leadbetter as the appellant in this case.