[Cite as *BND Rentals, Inc. v. Gayhart*, 2026-Ohio-1998.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| BND RENTALS INC. | : | |
| | : | C.A. No. 30659 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CV 01965 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| COY GAYHART | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 29, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

EPLEY, J., and HANSEMAN, J., concur.

THOMAS G. EAGLE, Attorney for Appellant
RONALD J. KOZAR, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Defendant-appellant Coy Gayhart appeals the judgment of the Montgomery County Common Pleas Court granting summary judgment in favor of plaintiff-appellee BND Rentals, Inc. ("BND"), on BND's breach of contract claim against Gayhart and granting BND's post-judgment motion for attorney's fees.

{¶ 2} In April 2023, BND, which operates as Vandalia Rental, initiated this action against Gayhart for breach of an equipment rental agreement, seeking to recover past-due rental payments. Gayhart did not make payments under the contract for seven months, and despite his desire to purchase the equipment from BND, he never accepted BND's two purchase offers before BND sold the equipment to a third party.

{¶ 3} BND moved for summary judgment on its claim, and Gayhart opposed BND's motion, arguing that genuine issues of material fact remained because BND had not presented sufficient evidence supporting its claim. Gayhart further claimed several defenses, including breach of the duty of good faith and fair dealing, estoppel, unclean hands, and recoupment. However, based on the record, we find that the trial court did not err in granting summary judgment because BND submitted sufficient evidence demonstrating its claim and Gayhart failed to establish a defense.

{¶ 4} BND also sought attorney's fees based on the language in the contract and requested a determination of the amount by post-judgment motion. Gayhart objected. He argued that the rental contract at issue was a "contract of indebtedness" as defined by

2

R.C. 1319.02, and because attorney fees are not permissible under the statute when the contract does not exceed $100,000.00, the fee-shifting provision in the contract was unenforceable. However, the rental contract did not constitute a "contract of indebtedness" as intended by R.C. 1319.02, and thus BND was entitled to an award of attorney's fees as set forth in the agreement.

{¶ 5} For the reasons outlined below, we affirm the judgment of the trial court.

## I. Background Facts and Procedural History

{¶ 6} In August 2020, BND rented an excavator to Gayhart for his business, Coy's Excavating, pursuant to an equipment rental agreement. The contract stipulated a rental rate of $426.00 per day, $1,379.00 per week, or $3,378 every four weeks for the excavator, with net payments due every 30 days. It contained no warranties of merchantability or fitness, and Gayhart was responsible for the safe use, maintenance, and safekeeping of the equipment. The contract provided that Gayhart agreed to pay all costs and reasonable attorney's fees incurred by BND if it filed suit to recover the excavator or to enforce any of the terms of the contract. The contract also provided that Gayhart agreed to pay all charges and costs for the use of the equipment upon its return to BND and that Gayhart agreed to pay a late payment penalty at the rate of 2% per month on all delinquent accounts. Gayhart, as the "owner" of Coy's Excavating, signed a credit application with Vandalia Rental, which provided that "[a]ny amount past due will be assessed a 2% Service Charge per month (Annual Rate 24%)."

{¶ 7} Gayhart maintained possession of the excavator from August 2020 until January 2023. During that time, he made some of, but not all, the required payments and eventually returned the equipment.

{¶ 8} On December 20, 2022, BND provided Gayhart with a "rental purchase quote" as an offer to sell the equipment, offering a rental credit of $17,360.00 and a net purchase price of $61,690.00; the quote expired on January 2, 2023. Gayhart objected to the quote, asserting that it did not provide what he believed was the full promised credit for rental payments.

{¶ 9} On January 4, 2023, BND created a new quote for Gayhart, offering a rental credit of $17,920.00 and a net purchase price of $61,130.00. The quote had an expiration date of January 30, 2023, and stated, in part:

> Please note that all previous invoices will remain due in full and a rental credit of 20% (up to a maximum credit of 75% of the equipment purchase price) of the previously invoiced rental amount will be applied to the purchase invoice, if purchased. . . .
>
> . . .
>
> To discontinue rental fees from being incurred and purchase the aforementioned items(s), please sign this quote and return it to us. Do not return the equipment; rental credit will be forfeited once the equipment has been returned.

{¶ 10} According to Gayhart, however, he did not receive the revised quote until after it had already expired. He claimed that he later went to BND to pay off the account and buy the equipment but was told that the equipment had already been sold to another buyer on January 25, 2023 (five days before his quote was scheduled to expire), although he alleged that he had never received it.

{¶ 11} In April 2023, BND filed its complaint for breach of the rental contract against Gayhart, seeking damages for Gayhart's failure to pay for the excavator rental as agreed in

4

the contract, as well as interest, costs, and attorney's fees. BND attached a billing statement showing seven months of unpaid rental fees from July 2022 to January 2023. BND sought $18,601.22 in unpaid monthly rental fees and interest.

{¶ 12} In March 2024, BND moved for summary judgment on its breach of contract claim, seeking the principal amount of $15,559.25, as well as interest at the rate of 24% a year as to any past-due amounts from February 1, 2023 (the 30th day after the last invoice at issue). In support of its motion, BND submitted the affidavit of Sandra Roller, Accounts Receivable Supervisor at BND. Roller, via the affidavit, testified regarding the terms of the rental contract and stated that the principal amount owed by Gayhart totaled $15,559.25 plus interest. BND also submitted an invoice with the monthly charges for past-due rent and accumulated interest, totaling $18,601.22. In its motion, BND stated that if it obtained judgment against Gayhart on its claim, it would request recovery of its attorney's fees by post-judgment motion.

{¶ 13} In opposition to BND's summary judgment motion, Gayhart testified by affidavit that during the course of his possession of the equipment, the excavator was out of service and unusable on two occasions—June 23, 2021, to June 29, 2021, and September 28, 2021, to September 29, 2021. According to Gayhart, during those periods, he requested a credit toward the rental cost. He claimed that BND repeatedly told him that he could buy the equipment at a reduced price with consideration for the years he had rented it and that BND had promised him a purchase quote. Gayhart also claimed that he had relied on BND's promise to sell him the equipment and that BND's sale of the equipment to another party cost him the rental equity toward the purchase price that he had accumulated over his rental years. He asserted that BND's delay in providing him a quote caused additional late charges and other penalties to accrue on his account, which were to his detriment.

5

{¶ 14} In May 2024, the trial court granted BND's motion for summary judgment. The court found that the clear language of the rental contract established that Gayhart contracted with BND to make rental payments for the equipment during the time period at issue—July 2022 to January 2023. The court reasoned that although Gayhart believed his failure to make those payments was justified because he intended to purchase the equipment, he failed to provide any evidence to establish that the parties agreed to an alternative fee arrangement for his rental payment obligations or that he had actually contracted to purchase the equipment in the first place. The court explained that the evidence established a valid and binding rental contract between the parties, which Gayhart breached by failing to make the required rental payments, and thus BND was entitled to summary judgment.

{¶ 15} Thereafter, BND filed its post-judgment motion for attorney's fees, noting that the fee amount increased each time counsel performed work on its case. The parties later filed a stipulation stating that BND had reasonably incurred $5,820.00 in attorney's fees and that Gayhart had not waived any defense against BND's motion for attorney's fees.

{¶ 16} In July 2025, the magistrate granted BND's motion for attorney's fees in the amount of $5,280.00 (not $5,820.00). Gayhart filed objections to the magistrate's decision contesting the award of any attorney's fees. He argued that BND had failed to seek attorney's fees in its motion for summary judgment or to request to reserve or bifurcate that issue prior to final judgment. He also argued that the contract did not allow consideration of attorney's fees and that such fees were barred by R.C. 1319.02(A)(1). The trial court overruled Gayhart's objections and adopted the magistrate's decision. The court found not only that BND had sought attorney's fees in its complaint but also that in its motion for summary judgment, it specifically expressed its intention to pursue attorney's fees by way of a post-judgment motion if judgment was entered in its favor.

6

{¶ 17} Gayhart now appeals the trial court's judgment awarding summary judgment and attorney's fees to BND.

## II. Assignments of Error

FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN GRANTING BND'S MOTION FOR SUMMARY JUDGMENT.

{¶ 18} Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.). "Summary judgment is a potentially useful, but extraordinary, procedure wherein the trial of issues of fact made up by the pleadings is avoided." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St. 3d 157, 161 (1990).

{¶ 19} Because summary judgment is "a shortcut through the normal litigation process by avoiding a trial," the burden of demonstrating that no genuine issues exist as to any material fact strictly falls upon the moving party requesting summary judgment. *Id.*; *see also Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party cannot rely upon the mere allegations or denials in the pleadings but must give specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, ¶ 14 (2d Dist.).

7

{¶ 20} While the party responding to a motion for judgment may have to overcome the burden of proof at trial, that party does not have that burden when responding to a summary judgment motion and may rely on evidentiary material already submitted by the movant. *AAAA Ents.* at 161. Summary judgment "'must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.'" *Murphy v. Reynoldsburg*, 65 Ohio St. 3d 356, 358-59 (1992), quoting *Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2 (1982).

{¶ 21} On summary judgment, whether or not a genuine issue of fact is material depends on the substantive law. *Barney v. Chi Chi's, Inc.*, 84 Ohio App. 3d 40, 43 (1992). "Only dispute over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions, or interrogatories are in conflict. *Link v. Leadworks Corp.*, 79 Ohio App.3d 735, 741 (1992).

{¶ 22} We review the trial court's ruling on a summary judgment motion de novo. *Schroeder v. Henness*, 2013-Ohio-2767, ¶ 42 (2d Dist.).

{¶ 23} In his first assignment of error, Gayhart contends that the trial court erred in granting BND's motion for summary judgment on its breach of contract claim. He argues that there was insufficient evidence establishing the elements of an action on account to warrant summary judgment. He also asserts several defenses against BND's claim, including breach of the duty of good faith and fair dealing, estoppel, unclean hands, and recoupment.

{¶ 24} "To prove a breach of contract claim, a plaintiff must show the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." (Cleaned up.) *Discover Bank v. Doran*, 2011-Ohio-205, ¶ 9 (10th Dist.). Although founded in contract, an action on an account "'exists only as to the balance that may be due one of the parties as a result of [a] series of transactions.'" (Bracketed text in original.) *Citibank (S.D.) N.A. v. Lesnick*, 2006-Ohio-1448, ¶ 8 (11th Dist.), quoting *Am. Sec. Serv., Inc. v. Baumann*, 32 Ohio App.2d 237, 242 (1972). "The 'cause of action does not exist with reference to each item of the account, but only as to the balance that may be due to one or the other parties.'" *Id.*, quoting *Ludwig Hommel & Co. v. Woodsfield*, 115 Ohio St. 675, 681 (1927). "The purpose of an action on an account is 'to avoid the multiplicity of suits necessary if each transaction between the parties (or item on the account) would be construed as constituting a separate cause of action.'" *Id.*, quoting *Baumann* at 242. To establish a prima facie case for money owed on an account, "'[a]n account must show the name of the party charged and contain: (1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due.'" (Bracketed text in original.) *Id.* at ¶ 9, quoting *Gabriele v. Reagan*, 57 Ohio App.3d 84, 87 (1988), quoting *Brown v. Columbus Stamping & Mfg. Co.*, 9 Ohio App.2d 123 (1967), paragraph three of the syllabus.

{¶ 25} Gayhart first argues that BND failed to set forth sufficient evidence of an action on account claim. However, the action brought by BND relates to the breach of an equipment rental agreement, which constituted a breach of contract claim, not an action on account

9

claim as framed by Gayhart. An action on account claim is primarily used for open, running accounts, such as a credit card or running supplier account where transactions are charged over time, while a breach of contract claim is appropriate for a single, distinct lease of specific equipment. Here, BND claimed not that Gayhart owed rent on a series of rental contracts for a series of rented items, but rather that he owed rent on one rental contract concerning a single piece of equipment. Therefore, we are not persuaded by Gayhart that BND asserted an action on account claim and then failed to set forth sufficient evidence of the same on summary judgment.

{¶ 26} The only rental charges at issue in this case accumulated from July 2022 to January 2023 when Gayhart failed to make payments as required under the agreement, allegedly because he was waiting for BND to provide him with a purchase quote. The rental fees during the alleged breakdowns of the equipment in 2021 were not at issue in this case, as Gayhart paid those rental fees, and Gayhart failed to show that those breakdowns would have entitled him to any reduction in the rental charges at issue.

{¶ 27} Moreover, even if Gayhart had expected a purchase quote from BND, he was not exempted from making the required monthly rental payments while he was waiting for the quote, because there was no evidence of an alternative rental fee arrangement between the parties. In other words, there was no written contract between BND and Gayhart regarding the sale of the equipment. BND offered purchase quotes to Gayhart, but no purchase agreement was ever executed. The January 4 quote was merely an offer that if Gayhart had accepted, he would have been able to purchase the equipment for the amount stated. However, there was no promise to keep the equipment off the market while Gayhart considered the purchase, and the offer did not relieve Gayhart of his obligation to pay the seven months of past-due rental payments.

**{¶ 28}** In his first defense to justify his failure to pay the rental payments, Gayhart contends that BND violated the duty of good faith and fair dealing when it offered the equipment to him for a reduced purchase price with credit ("equity") for prior rent payments and then sold it to a third party before he accepted the offer. We disagree.

**{¶ 29}** Every contract imposes an implied duty of good faith and fair dealing in its performance and enforcement. *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 42, citing *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443 (1996), and Restatement of the Law 2d, Contracts, § 205 (1981). However, "[a] party to a contract does not breach the implied duty of good faith and fair dealing by seeking to enforce the agreement as written or by acting in accordance with its express terms, nor can there be a breach of the implied duty unless a specific obligation imposed by the contract is not met." *Id.*, paragraph 3 of syllabus. Still further, "[u]nder 'traditional contract principles . . . an offer may be withdrawn at any time before it is accepted.'" *Ohio Title Corp. v. Pingue*, 2012-Ohio-1370 (10th Dist.), quoting *Complete Gen. Constr. Co. v. Kard Welding, Inc.*, 2009-Ohio-1861 (10th Dist.).

**{¶ 30}** Gayhart's argument fails for several reasons. The only agreement at issue in this case is the equipment rental agreement, and BND filed its breach of contract action to enforce the written terms of that agreement. Gayhart appears to assume that by renting the equipment, he was building "equity" in it, as if the rental transaction was not a rental but rather was an installment purchase. While there were two purchase quotes offered to Gayhart by BND, both quotes provided that "all previous invoices will remain due in full and a rental credit of 20% (up to a maximum credit of 75% of the equipment purchase price) of the previously invoiced rental amount will be applied to the purchase invoice, *if purchased*," and that Gayhart could "discontinue rental fees from being incurred" if he purchased the

11

equipment by signing the quotes. The quotes also warned Gayhart that any rental credit would be forfeited if he returned the equipment, which he did. However, Gayhart never accepted those offers, and thus no purchase agreement was ever reached. BDN was free to rescind or revoke the offer at any time prior to acceptance, and it did by selling the equipment. Under these circumstances, BND did not breach the implied duty of good faith and fair dealing by seeking to enforce the rental agreement as written or by acting in accordance with its express terms. There was no evidence that BND did not meet a specific obligation under the rental contract. Perhaps more importantly, Gayhart never accepted the offer to purchase the equipment, and thus the original contract was never altered or modified by a subsequent agreement.

{¶ 31} Next, Gayhart asserts an estoppel defense, arguing that he relied on BND to perform its promise in providing him with a purchase quote; that he waited to his detriment on that promise because BND took too long to provide him with a quote, which resulted in additional past-due payments and increased the amount owed to BND under the rental contract; and that he suffered the loss of the equipment when it was sold to another party, which deprived him of the "equity" he had accumulated.

{¶ 32} "'The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice.'" *Olympic Holding Co. v. ACE Ltd.*, 2009-Ohio-2057, ¶ 39, quoting *Doe v. Univision Television Group, Inc.*, 717 So.2d 63, 65 (Fla.App. 1998), citing Restatement of the Law 2d, Contracts, § 90 (1981); *see also Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 389 (Minn. 1992). "'To be successful on a claim of promissory estoppel, "[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know

12

and could not have known that its adversary's conduct was misleading."'" *Id.*, quoting *Shampton v. Springboro,* 2003-Ohio-1913, ¶ 34, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990), citing *Heckler v. Community Health Serv.*, 467 U.S. 51, 59 (1984).

{¶ 33} "The doctrine of equitable estoppel generally requires actual or constructive fraud." *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St. 3d 26, 35 (1994), citing *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund*, 69 Ohio St.3d 409, 414 (1994). "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *Id.* at 34.

{¶ 34} To justify his failure to pay the rental payments as agreed, Gayhart argues that he relied on BND's promise to quote him a purchase price and that he simply stopped making payments in the meantime. However, there was no evidence that BND promised him that he was not expected to make the rental payments as agreed pending a purchase agreement, nor was there any evidence that BND engaged in fraud. In other words, even if BND had promised Gayhart a future purchase quote, his obligations under the plain language of rental contract did not change. A future purchase quote would have been an entirely separate contractual agreement, and the unaccepted offer did not alter or modify Gayhart's existing obligations under the rental agreement. He has not demonstrated that he changed his position for the worse because of BND's alleged promise or that he reasonably relied on that promise to forego making the rental payments. Thus we cannot say that BND should have been estopped from asserting its rights under the rental contract.

{¶ 35} Third, Gayhart complains that BND acted with unclean hands in its performance of the rental contract and in making post-rental-contract promises to him. He

13

argues that BND took his money and strung him along while delaying the offer of a purchase quote. The unclean hands doctrine stands for the premise that a party seeking equity must come to court with clean hands. *Basil v. Vincello*, 50 Ohio St. 3d 185, 190 (1990). The doctrine requires a showing that the offending party engaged in "reprehensible conduct with respect to the subject matter" of the suit. *Id*. It does not appear from the record that BND's conduct in offering two purchase quotes to Gayhart and then selling the equipment before Gayhart accepted the second offer, which he did not do, rose to the level of reprehensible conduct, particularly because those offers could have been revoked at any time prior to acceptance.

{¶ 36} Finally, Gayhart contends that summary judgment was inappropriate when there was a dispute over recoupment to reduce BND's damages. "Recoupment is an affirmative defense, arising out of the same transaction as a plaintiff's claim, which entitles the defendant to reduce the amount demanded, but only to the extent sufficient to satisfy the plaintiff's claim." *Kamlani v. A.C. Leadbetter & Son, Inc.*, 2006-Ohio-2116, ¶ 16 (6th Dist.), citing *Riley v. Montgomery*, 11 Ohio St.3d 75, 77 (1984). Under a recoupment defense, the defendant must allege that "'"the plaintiff's claim is based on a particular contract or transaction and that to entitle the plaintiff to the sum claimed, he must prove compliance with certain obligations of the contract; that he failed to do so; and therefore that the defendant has been so damaged in the transaction that the plaintiff is not entitled to recover."'" *Id*., quoting *Cauffiel Machinery Co. v. Eastern Steel & Metal Co.*, 59 Ohio App.2d 1, 6 (6th Dist. 1978), quoting 20 Am.Jur.2d, Counterclaim, Recoupment, and Setoff, § 11, at 235. There is nothing in the record demonstrating that BND failed to comply with the rental contract and that Gayhart was so damaged in the transaction that BND was not entitled to recover.

14

**{¶ 37}** Gayhart's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN GRANTING BND'S MOTION FOR ATTORNEY FEES.

**{¶ 38}** Generally, "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 2009-Ohio-306, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33-34 (1987), and *State ex rel. Beebe v. Cowley*, 116 Ohio St. 377, 382 (1927). *See Kent State Univ. v. Bradley Univ.*, 2019-Ohio-2088, ¶ 84 (11th Dist.) ("Parties in Ohio are generally responsible for their own attorney fees."), citing *Reagans v. MountainHigh Coachworks, Inc.,* 2008-Ohio-271, ¶ 36. However, there are exceptions to this rule, including when attorney's fees are claimed under a fee-shifting provision in an enforceable contract. *Wilborn* at ¶ 7, citing *Nottingdale* at 34. The rationale permitting recovery under this circumstance is the "'fundamental right to contract freely with the expectation that the terms of the contract will be enforced.'" *Id*. at ¶ 8, quoting *Nottingdale* at 36. "[A]greements to pay another's attorney fees are generally 'enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.'" *Id*., quoting *Nottingdale* at syllabus.

**{¶ 39}** Civ.R. 54(B) governs judgments in cases involving multiple claims and allows a court to enter judgment on some but not all issues before the entire case concludes. "When attorney fees are requested in the original pleadings, a party may wait until after the entry of a judgment on the other claims in the case to file its motion for attorney fees." *Internatl. Bhd. of Elec. Workers, Loc. Union No. 8 v. Vaughn Industries, L.L.C.*, 2007-Ohio-6439, paragraph one of syllabus. The reasonable amount of attorney's fees to be awarded may be determined following a judgment. *See Gaitawe v. Mays,* 2012-Ohio-4749, ¶ 16 (2d Dist.).

15

{¶ 40} A trial court's award of attorney's fees is reviewed for abuse of discretion. *Nordquist v. Schwartz,* 2012-Ohio-4571, ¶ 24 (7th Dist.). "An appellate court will not interfere with a trial court's award "'[u]nless the amount of fees determined is so high or so low as to shock the conscience.'"" *Columbus Truck & Equip. Co., Inc. v. L.O.G. Transp., Inc.*, 2013-Ohio-2738, ¶ 21 (10th Dist.), quoting *Lamar Advantage Gp Co. v. Patel,* 2012-Ohio-3319, ¶ 43 (12th Dist.), quoting *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991).

{¶ 41} In his second assignment of error, Gayhart argues that the trial court erred in granting BND's motion for attorney's fees. He contends that a post-judgment motion for attorney's fees pursuant to a contract provision cannot be granted where the movant did not move for summary judgment on attorney's fees or request to reserve the issue prior to final judgment. He also argues that BND's claim for attorney's fees did not satisfy the requirements necessary for an award of such fees, as the fee-shifting provision in the contract was unenforceable under R.C. 1319.02. We disagree.

{¶ 42} In its motion for summary judgment, BND expressly stated that it would reserve the attorney-fee request for a post-judgment motion because "[u]ntil then, the attorney-fee figure is an indeterminate, moving target." Gayhart did not object to that procedure, nor did he suggest that the procedure was improper until after summary judgment had been entered in BND's favor and BND's motion for attorney's fees had been made. The parties even filed a stipulation agreeing to the amount of attorney's fees sought by BND. Moreover, based on Civ.R. 54(B), the trial court was free to adjudicate the merits of BND's breach of contract claim and enter summary judgment that was only partial, leaving the attorney-fee issue for later proceedings. Because BND requested attorney's fees in its original pleading and reserved the right to pursue those fees in its summary judgment motion, BND was permitted

to wait until after the entry of summary judgment on its breach of contract claim to file its motion for attorney's fees.

{¶ 43} Gayhart also argues that the rental contract at issue was a "contract of indebtedness" as defined by R.C. 1319.02. He contends that the fee-shifting provision in the contract was unenforceable because attorney's fees are not permissible under the statute when the contract does not exceed $100,000.00. In consideration of the contract, we disagree.

{¶ 44} R.C. 1319.02 relates to the enforcement of provisions requiring the payment of attorney's fees in a commercial contract of indebtedness. A "contract of indebtedness" means a note, bond, mortgage, conditional sale contract, retail installment contract, lease, security agreement, or other written evidence of indebtedness, other than indebtedness incurred for purposes that are primarily personal, family, or household. R.C. 1319.02(A)(1). R.C. 1319.02 "allows for an award of attorneys' fees where: (1) the parties have entered into a 'contract of indebtedness,' (2) the contract of indebtedness includes a commitment to pay attorneys' fees, (3) the contract is enforced through judicial proceedings or otherwise after maturity of the debt, (4) the total amount owed on the contract at the time such contract was entered into exceeds $100,000, and (5) the obligation constitutes a reasonable amount." *Columbus Truck*, 2013-Ohio-2738, at ¶ 11 (10th Dist.), citing *Saad v. GE HFS Holdings, Inc.*, 366 Fed.Appx. 593, 606 (6th Cir. 2010). Thus, a commitment to pay attorney's fees under R.C. 1319.02 is only enforceable "if the total amount owed on the contract of indebtedness at the time the contract was entered into exceeds one hundred thousand dollars" and "only to the extent that it obligates payment of a reasonable amount." R.C. 1319.02(C) and (D). "If a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after

17

maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment, to the extent that the commitment is enforceable under divisions (C) and (D) of this section." R.C. 1319.02(B). Gayhart contends that under R.C. 1319.02, the rental contract, as a contract of indebtedness, did not satisfy the $100,000.00 monetary threshold to allow an attorney's fees claim, and thus BND was not entitled to enforce a contractual provision for attorney's fees.

{¶ 45} At issue in this case is the interpretation of the rental contract between the parties. The Tenth District addressed a similar contract in the context of R.C. 1319.02 in *Columbus Truck*. In that case, the lease agreement at issue related to the short-term rental of a vehicle in which the lessee (customer) did not acquire any title or ownership rights to the vehicle. *Columbus Truck* at ¶ 8-9. The agreement provided that the lessee would pay the lessor "all costs, including attorney fees, in connection with the collection amounts payable by Customer to Lessor hereunder or the enforcement of any provisions of [the lease agreement]." *Id*. at ¶ 9. The lessee argued that R.C. 1319.02—governing the enforcement of a commitment to pay attorney's fees in commercial contracts of indebtedness—was applicable to the lease agreement. *Id*. at ¶ 10. The lessee contended that the contract was a "lease" as contemplated by R.C. 1319.02 and that the statute bars recovery of attorney's fees for the enforcement of a contract of indebtedness for less than $100,000.00. *Id*. at ¶ 12. The lessor, on the other hand, argued that R.C. 1319.02 is intended to apply to contracts relating to financing arrangements, not to simple rental agreements such as the one in that case. *Id*.

{¶ 46} The Tenth District found that the lease agreement executed by the parties lacked the attributes of a "contract of indebtedness." *Id*. at ¶ 15. The terms of the lease

18

agreement were open-ended, provided for rental payments on a weekly or monthly basis, and offered the option to the lessee to surrender the property to the lessor and terminate the agreement at any time. *Id*. The lease agreement contained no terms obligating payment of a specified principal sum, thereby indicating indebtedness, nor did the agreement provide a maturity date. *Id*. The court observed that the Supreme Court of Ohio had held that "the lease of tangible personal property for a stipulated rental, in which the lessor does not transfer title, and continues to own the property, 'is not an "evidence of indebtedness"' similar to obligations such as bonds, certificates of indebtedness, debentures, and notes." *Id.*, quoting *Columbus & S. Ohio Elec. Co. v. Peck*, 161 Ohio St. 73, 77 (1954). Accordingly, based on the terms of the agreement, the court concluded that the lease agreement did not constitute a "contract of indebtedness" (requiring a $100,000.00 monetary threshold) as contemplated by R.C. 1319.02 and that the lessor was therefore entitled to an award of attorney's fees under the terms of the agreement. *Id*. at ¶ 15-16.

{¶ 47} Like the rental agreement in *Columbus Truck*, the rental contract in this case was an agreement where Gayhart (lessee) agreed to make payments to BND (lessor) for equipment use, creating a rental payment obligation. The contract contained open-ended terms, provided for rental payments on a weekly or monthly basis, and offered the option to Gayhart to surrender the equipment to BND and terminate the contract. The contract contained no terms obligating payment of a specified principal sum and no maturity date. Under the terms of the contract, BND continued to own the equipment and did not transfer title to Gayhart. Thus, like the court in *Columbus Truck,* we find that the rental contract in this case did not constitute a "contract of indebtedness" as intended by R.C. 1319.02 and that BND was entitled to an award of attorney's fees as set forth in the contract. Moreover, in light of the holding in *Columbus Truck,* we conclude that an equipment rental agreement

19

in Ohio is generally considered a contractual obligation to pay for the use of property, rather than a traditional "contract of indebtedness" that represents a fixed debt.

**{¶ 48}** Given that the parties entered a stipulation that the amount of attorney's fees sought by BND were reasonable, we cannot say that the fees granted by the trial court were so high or low as to shock the conscience or that the trial court abused its discretion in awarding attorney's fees.

**{¶ 49}** Gayhart's second assignment of error is overruled.

### III. Conclusion

**{¶ 50}** Having reviewed the record, we cannot say that the trial court erred in granting summary judgment in BND's favor on its breach of contract claim or in sustaining BND's post-judgment motion for attorney's fees as set forth in the rental contract. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J., and HANSEMAN, J., concur.